Mickie FOREMAN, Cordell Alexander, Victoria Barkley, Halyne King, June King, Beverly Perry, John A. Rhodes, Spurgeon L. Walker, Individually, And on Behalf of All Others Similarly Situated, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION**
et al., Defendants.

Mickie FOREMAN, Cordell Alexander, Victoria Barkley, Halyne King, June King, Beverly Perry, John A. Rhodes, Spurgeon L. Walker, Individually, And on Behalf of All Others Similarly Situated, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION**
et al., Defendants.

Civ. A. No. 6–70389.

United States District Court,
E. D. Michigan, S. D.

June 27, 1979.
As Amended June 28, 1979.

Thomas B. Canaday, Detroit, Mich., for plaintiffs Mickie Foreman, Cordell Alexander, Victoria Barkley, Halyne King, June King, Beverly Perry, John A. Rhodes, Spurgeon L. Walker, and on behalf of all others similarly situated.

Wendell R. Tucker, Detroit, Mich., for General Motors Corp.

Douglas E. Cutler, Richard J. Molloy, and Arnold G. Shulman, Dearborn, Mich., for Ford Motor Co.

Noel C. Crowley, Southfield, Mich., for The Bendix Corp.

Dickinson, Wright, McKean, Cudlip & Moon by John Corbett O'Meara and Kenneth J. McIntyre, Detroit, Mich., for Allied Chemical Corp. and Bower Roller Bearing Division, Federal Mogul Co.

Garan, Lucow, Miller, Lehman, Seward & Cooper by Daniel L. Garan, Detroit, Mich., for Westinghouse Electric Corp. and Allied-Kelite Products Division of The Richardson Co.

Miller, Canfield, Paddock & Stone by James E. Tobin, Detroit, Mich., for American Standard Industrial, G. A. F. Corp., Parke-Davis & Co., Rockwell International, Rockwell-Standard Company North American Rockwell and William Usery, Secretary, U.S. Dept. of Labor.

Robert H. Worpell, President, McIntosh Division, Detroit, Mich., for O. L. Anderson Co.

Dykema, Gossett, Spencer, Goodnow & Trigg by Thomas L. Munson, James D. Tracy and Bettye S. Elkins, Detroit, Mich., for Ex-Cell-O Corp., National Gypsum Co., Huron Portland Cement Div., Prestyle Manufacturing Co., Division of Roberts Tube Co., Sealtest Foods Division of Kraftco, Uniroyal Inc. and Standard Tube Co., Division of Michigan Seamless Tube Co.

Dahlberg, Mallender & Gawne by Philip A. Grashaff, Jr., Detroit, Mich., for Brooks & Perkins Inc.

Colombo & Colombo by Louis J. Colombo, Jr., Birmingham, Mich., for The Budd Co.

Gerald E. Granadier, Detroit, Mich., for Copco Steel & Engineering Co.

Clark, Klein, Winter, Parsons & Prewitt by H. William Butler, David M. Hayes and Fred W. Batten, Detroit, Mich., for Con Vel Division—Dana Corp., Ferro Manufacturing Corp. and Massey-Ferguson Inc.

Bassey, Selesko, Couzens & Murphy by David M. Lansky, Southfield, Mich., for H. A. Davidson Box Corp.

Frank S. Perkin, Jr., Troy, Mich., for Fruehauf Corp., Kelsey-Hayes Co.

Oscar H. Feldman, James M. Wienner, Detroit, Mich., for Guardian Corp.

Thomas R. McAskin, Romulus, Mich., for Kelsey-Hayes Co.

Cross, Wrock, Miller & Vieson by W. Robert Chandler, Detroit, Mich., for Lear Siegler Inc.

Dickinson, Wright, McKean, Cudlip & Moon by Lawrence G. Campbell, Detroit, Mich., for McLouth Steel Corp.

Riley & Roumell by George T. Roumell, Jr., John F. Brady, Detroit, Mich., for Michigan Dynamics Division of Ambac Industries Inc.

Charles A. Walker and Robert F. Conte, Taylor, Mich., for Molloy Manufacturing Division Masco Corp.; Dykema, Gossett, Spencer, Goodnow & Trigg by Thomas L. Munson, James D. Tracy and Bettye S. Elkins, Detroit, Mich., of counsel.

Mark R. Hauser, Southfield, Mich., for Parke-Davis & Co.

Freud, Markus, Slavin, Toohey & Galgan by Frank S. Galgan, Troy, Mich., for Prestyle Manufacturing Co., Division of Roberts Tube Co.

Keller, Thoma, Toppin & Schwarze by Thomas L. Fleury, Detroit, Mich., for Putnam United–Greenfield Div. of T R W Inc.

John Corbett O'Meara, Detroit, Mich., for Ready-Power Co., Division of Dyna Technology Inc.

Hertzberg, Jacob & Weingarten by Herbert N. Weingarten, Detroit, Mich., for Reliance Steel Corp., Division of National Industries Inc.

Dyer, Meek, Ruegsegger & Bullard by Lewis M. Slater, Detroit, Mich., for Republic Steel Corp.

Richard G. Gay, Columbus, Ohio, for Seven-Up Bottling Co. of Detroit; John A. MacLeod, Detroit, Mich., Robert M. Draper, Columbus, Ohio, Jon M. Sebaly and Robert J. Brown, c/o Smith & Schancke, Dayton, Ohio, of counsel.

Philip Van Dam, Thomas M. Woods, Asst. U. S. Attys., Detroit, Mich., and Jonathan Waxman, Acting Counsel for Litigation, Beverly J. White, Atty., U. S. Dept. of Labor, Washington, D. C., for William Usery, Secretary, U. S. Dept. of Labor.

Frank J. Kelley, Atty. Gen., of Mich., Felix E. League and E. J. Setlock, Asst. Attys. Gen., Detroit, Mich., for Keith E. Molin, Director, Michigan Department of Labor and ex officio Michigan Employment Security Commission, S. Martin Taylor, Director, Michigan Employment Security Commission, Frank C. Padzieski, Chairman, Michigan Employment Security Commission, Walter A. Campbell, Member, Michigan Employment Security Commission, Alexander Fuller, Member, Michigan Employment Security Commission, Raymond M. Lyons, Member, Michigan Employment Security Commission, (All of the above Commissioners in their individual capacities, and as representatives of Employers and Unions) Michigan Employment Security Commission, Robert Baker, Director, Bureau of Employment Services, Michigan Employment Security Commission, Thomas H. Massey, Manpower Services Director, Manager of Employment Services Staff subcontracted to CEP, now CETA.

Corporation Counsel, City of Detroit by William B. Beach, Detroit, Mich., for Coleman R. Young, Mayor, City of Detroit, Frank L. Bigham, Director, Manpower Dept. City of Detroit, CETA Director, Manpower Department of the City of Detroit, formerly Concentrated Employment Program (CEP) of the City of Detroit, Leon W. Shearer, formerly CEP Director, now Director of Information, Manpower Department CETA, City of Detroit.

## OPINION AND ORDER

THORNTON, District Judge.

The Court has for consideration motions to dismiss by approximately 50 private corporations, as well as by the Secretary of the U.S. Department of Labor, the Director and various Commissioners and employees of the Michigan Employment Security Commission, and the Mayor of the City of Detroit and various officials associated with the City's Concentrated Employment Program or its Manpower Department or CETA program. The Amended Complaint is a 31-page document hereinafter more fully described. As a gentle introduction to its style and contents we set forth below the entitlement and the first few paragraphs:

AMENDED COMPLAINT FOR VIOLATION OF THE CIVIL RIGHTS ACTS OF 1866 AND 1871 AND TITLES VI AND VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action arises under the provisions of Titles VI and VII of the Acts of Congress known as: the Civil Rights Acts of 1964, 42 U.S.C. Sections 2000d et seq., and 42 U.S.C. Sections 2000e, as amended (Supp. II, 1972); the Civil Rights Acts of 1866 42 U.S.C. Sections 1981 and 1982; and the Civil Rights Acts of 1871, 42 U.S.C. Section 1983; 42 U.S.C. Section 1985, 42 U.S.C. Section 1986 and 42 U.S.C.; Section 1988. Moreover, this action also arises under Article I Section 2

of the Michigan Constitution of 1963 and the Michigan Fair Employment Practices provisions of M.C.L.A. Section 423.301.

## JURISDICTION

2. The jurisdiction of the Court is invoked pursuant to 42 U.S.C. Section 2000e–5(f), 28 U.S.C. Sections 1331, 1337, 1343 and 1361; also, 42[28] U.S.C. Sections 2201 and 2202.

3. The jurisdiction of this Court is invoked to redress deprivation and obtain protection of rights secured by 42 U.S.C. Sections 2000e *et seq.*, providing for injunctive and other relief against discrimination in employment on the basis of race, religion, sex, and national origin; the Thirteenth and Fourteenth Amendments to the United States Constitution as enforced through 42 U.S.C. Sections 1981 and 1982, eradicating badges and vestiges of servitude and providing for the equal rights of all persons in every state and territory within the jurisdiction of the United States; the Fourteenth Amendment to the United States Constitution as implemented in 42 U.S.C. Section 1983, providing for the redress of deprivation of rights under color of law; in 42 U.S.C. Section 1985, providing for relief from conspiracies to deprive persons of their civil rights, equal protection, privileges and immunities under the laws, and in 42 U.S.C. Section 1986, providing redress for neglect or refusal to prevent or aid in preventing such conspiracies; with 42 U.S.C. Section 1988 assuring appropriate remedial relief; and in 42 U.S.C. 2000d imposing an affirmative duty on federal officials to prohibit discrimination by State and local agencies funded by them.

## CLASS ACTION

4. Plaintiffs bring this action on their own behalf and on behalf of other persons similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The class which plaintiffs represent is composed of Black and female persons who were enrolled as employ-ment or training applicants by the Concentrated Employment Program (hereinafter "CEP"), an administrative "delivery system", designed to focus job development and employment placement services on the needs of poverty-level disadvantaged unemployed and underemployed residents of inner city communities, called "target areas", and who are now enrollees or might become enrolled with the Manpower Department of the City of Detroit, (hereinafter "CETA"), successor job development, training, and employment placement services to CEPs. While plaintiffs claim to represent only those "poverty-level" disadvantaged within former CEP programs, as well as existing CETAs, or those who might be enrolled, the interests of the entire class within all such national programs are adequately represented by plaintiffs. All of those represented by plaintiffs have been, and continue to be or might be adversely affected by the practices complained of herein. There are common questions of law and fact affecting the rights of the members of this class who are, and continue to be limited, classified, and discriminated against in ways which deprive and tend to deprive them of equal employment opportunities and otherwise affect their status as employment, apprenticeship or training applicants because of their race, sex, religion and national origin. These persons are so numerous that joinder of all members is impracticable. A common relief is sought. Insofar as the City of Detroit's CEP program has been rated as the exemplar, "Number One" of all CEPs in the nation by the U.S. Dept. of Labor, plaintiff enrollees of the Detroit CEP can adequately represent the interests of said class. Defendants have acted or refused to act on grounds generally applicable to the class. Under the aforesaid circumstances, the common interests of the class are such that any interest of the individual members of the class is completely outweighed by the desirability of concentrating the controversy in a single forum, and a class

action is superior to any other available method for the fair and efficient adjudication of the controversy.

## NATURE OF PROCEEDING

5. This is a proceeding for a declaratory judgment as to plaintiffs' rights, and for mandamus, injunctive relief as well as equitable damages to redress the deprivation of rights, restrain defendants from maintaining a policy, practice custom or usage of: (a) discriminating against Plaintiff and other Black and female persons in this class because of race, and sex with respect to job referral resources, including access to employers, job information and job development resources and (b) limiting, segregating and classifying employment applicant enrollees of the Concentrated Employment Program (CEP), now the Manpower Department of the City of Detroit, (CETA), in ways which deprive plaintiffs and other Black and female persons in this class of equal employment opportunities and otherwise affect their status as employment, apprentice and training applicants because of race, color or sex; moreover, the proceeding in mandamus is to compel the officers and agents of the U.S. government to carry out their duty to supervise USES programs and local CETAs and to take all steps necessary to overcome the discriminatory pattern and practice and conspiratorial treatment toward plaintiffs and the class they represent.

## PARTIES

6. (A) Plaintiff Mickie Foreman is a Black female citizen of the United States and a resident of Detroit in the State of Michigan. Plaintiff Foreman, a Senior Citizen, was enrolled by Defendants Leon W. Shearer or agents in the CEP—the City of Detroit, Michigan, acting in his official capacity as Director of the CEP, under the supervisory direction and control of Ralph Rosenfeld, predecessor to Frank L. Bigham, Manpower Director, and Coleman R. Young, Mayor of the City of Detroit. Plaintiff Ms. Foreman was a Senior Aide assigned, while an employment applicant, herself, to gather job information and referral resources particularly useful to herself and other CEP Senior Aide Project enrollees. Such resources were subcontracted from defendants Michigan Employment Security Commissioners, to be provided by agency staff, in part working in CEP Premises, managed by defendant Thomas H. Massey under the direction of defendants Robert Baker, Director of the Bureau of Employment Services, and S. Martin Taylor, Director of the Michigan Employment Security Commission (hereinafter "MESC").

(B) John A. Rhodes, Plaintiff, is a Black citizen of the United States and a resident of Detroit in the state of Michigan. Plaintiff Rhodes was enrolled by Defendant Leon W. Shearer or agents into the CEP—City of Detroit, Michigan, the latter acting in his official capacity as Director of the CEP, under the supervisory direction and control of defendants Ralph Rosenfeld, predecessor to Frank L. Bigham, Manpower Director, and Coleman R. Young, Mayor of the City of Detroit. In order to receive job information, job development and employer referral resources and other benefits and protections to which Plaintiff Rhodes was entitled, said services were subcontracted from MESC as described in (A) above.

(C) Plaintiffs Cordell Alexander and Spurgeon L. Walker are Black citizens of the United States and residents of Detroit, Michigan. Plaintiffs Alexander and Walker were enrolled in the CEP in the same manner, with the same reasonable reliance and entitlements, on the same terms and conditions as applied to Plaintiff Rhodes in (B) above.

(D) Plaintiffs Victoria Barkley, Halyne King, June King, and Beverly Perry are Black female persons, citizens of the United States and residents of Detroit in the State of Michigan. Plaintiffs Barkley, Halyne and her sister, June King, and Perry were enrolled in the CEP in the same manner, with the same reasona-

ble reliance and entitlements, on the same terms and conditions as applied to Plaintiffs Foreman and Rhodes in (A) and (B) above.

In their prayer for relief, consisting of ten paragraphs, plaintiffs seek a declaratory judgment, injunctive relief of several types, "make whole" money payments, "at least one billion dollars ($1,000,000,000.00) for mental distress imposed on these parties . . .", punitive damages in the amount of one billion dollars ($1,000,000,000.00), back pay award plus funds to assure they receive training that guarantees employment with "clear opportunity for advancement," retention of jurisdiction by this Court for the usual purposes, plus attorney fees, costs and disbursements.

On pages 11 and 12 of the Amended Complaint are paragraphs 10 and 11, which are the first two paragraphs under the heading "STATEMENT OF CLAIM." It appears to us that these paragraphs contain the gist of what plaintiffs are alleging in this meandering 31 pages as actionable wrongs. They read as follows:

## STATEMENT OF CLAIM

10. An unlawful agreement between the Michigan Employment Security Commission (MESC) and many major industrial employers in Detroit and the surrounding communities to restrict access to entry-level job openings and other employment opportunities in the primary industrial job market has been instituted and enforced in a continuing manner through a discriminatory pattern and practice of exclusion against plaintiffs and the class they represent. Defendants' policy, practice, custom and usage arising from this agreement is a pattern and practice of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e et seq. Federal financial assistance is also involved in the design, intent and purpose carried out in violation of 42 U.S.C. Section 2000d. Enforcing and perpetuating discriminatory policies, practices, customs and usages by defendants not only unlawfully deprives

plaintiffs and their class of equal benefits and protections, rights to contract equal to white citizens, according to the Civil Rights Act of 1866, 42 U.S.C. Sections 1981 and 1982, but the violations were and continue to be "under color of law" prohibited by the Civil Rights Act of 1871, 42 U.S.C. Section 1983. Defendants' conspiracy to constrict and deny employment opportunities under the guise of a program to extend and protect equal rights for even the most disadvantaged on the premises of CEP, now CETA, in design purpose and intent "freezing-out" employment needs of plaintiffs and the class they represent was and continues to be unlawful under 42 U.S.C. Section 1985.

11. The City of Detroit Manpower Program, under the control and supervision of Defendants, with notice of the continuing, as well as the extensive nature of the unlawful employment practices and the pattern and practice of discrimination has acted in concert with the conspirators to discriminate against plaintiffs and the class they represent; or has intentionally, negligently or recklessly refused or failed to act against the conspiratorial and discriminatory abuses against plaintiffs and the class they represent, in violation of 42 U.S.C. Section 1986.

Motions to dismiss by the named defendants have been filed, as have voluminous briefs in support thereof. Oral argument on said motions was had and a common presentation made of the arguments on the various issues. The issues raised by the motions to dismiss are fairly summarized as agreed upon by the various corporate defendants and argued by them. They are as follows:

1. As a matter of law individual defendants cannot conspire to influence government action.

2. Plaintiffs do not have standing to present the claims made in the Amended Complaint.

3. Plaintiffs have failed to state a claim under Title VII of the Civil Rights Act of 1964.

4. Plaintiffs have failed to state a claim under 42 U.S.C. § 1981 or § 1982.

5. Plaintiffs have failed to state a claim under Title VI of the Civil Rights Act of 1964 or 42 U.S.C. § 1983.

6. Plaintiffs have failed to state a claim under 42 U.S.C. § 1985 or § 1986.

7. The Amended Complaint does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure and defenses are properly raised under Rule 12 FRCP.

Before embarking on a discussion of the above-delineated issues, it appears to us not inappropriate and not without beneficial enlightenment to set forth the first few paragraphs as they appear in the brief submitted by counsel for three of the corporate defendants herein. These paragraphs are as follows:

### Introductory Statement

It appears to us that this ill-founded complaint resulted from someone's effort to identify the state of unemployment problems existing in the Detroit area and then, *ipso facto*, to assign these difficulties to industry and to certain governmental agencies. The first part of this endeavor is marginally useful and certainly not very intellectually challenging: It is no secret that unemployment in the inner city is unfortunately very high. This complaint's quixotic effort to determine what to do about this conclusion, by picking, apparently at random, large industrial employers and by assigning, without naming individual wrongdoers, vague and general social ills to them, is intellectually dishonest and violative of our canons of ethics and the Court Rules. Nowhere in the complaint is there any reference to a specific wrong which a specific corporate defendant is alleged to have committed although approximately fifty are named, headed (undoubtedly not by coincidence) by General Motors Corporation. This complaint could only have resulted from blissful ignorance as to what is required to state a cause of action or by an intent to create headlines regardless of the means used. In either event, plaintiffs' counsel runs afoul of F.R.C.P. 11 (and obviously F.R.C.P. 12(b)(6)), and the costs inevitably created, and otherwise charged back to the public and lessening the opportunities for new jobs which plaintiffs purport to speak about, should be passed on to plaintiffs' counsel instead.

### The Pleadings

It took several readings of this jumbled and ramblingly unintelligible complaint to even be able to guess as to what plaintiffs are complaining about. (There seemed to be the belief in the drafter's mind that lengthy and confusing sentence structure with the inclusion of catchy phrases will turn anything into actionable allegations of a complaint.) Our best guess now is that plaintiffs (more appropriately, their counsel) believe that the Michigan Employment Security Commission (MESC) is somehow mishandling a program for the referral of jobs to the disadvantaged. Such a charge necessarily would focus a complaint's thrust on the actions of the MESC. For some reason, and by the mere use of the nifty phrase "conspiracy," the names of corporate defendants, including those moving here, appear in the complaint. We will briefly examine the allegations of the complaint to determine what, if anything, is said with respect to the corporate defendants in general and with respect to the moving defendants specifically.

Paragraph 5 of the complaint, captioned promisingly "Nature of Proceeding" is silent as to how the complaint might address itself to any corporate defendant. It seems to speak about unhappiness with the use of "job referral resources" and how these have been hampered or not fully developed by various governmental agencies. The corporate defendants are only identified as such in paragraphs 6(AA) through (FF)—they are not alleged, in this paragraph, to have any connection whatsoever with the governmental agencies allegedly committing some wrong.

In paragraph 10, presumptuously captioned "Statement of Claim", plaintiffs

allege "an unlawful agreement between the Michigan Employment Security Commission (MESC) and *many* major industrial employers in Detroit and the surrounding communities to restrict access to entry level job openings . . ." From this allegation plaintiffs found no difficulty in thereafter referring generally to "defendants' conspiracy to constrict and deny employment opportunities", further down in that paragraph.

We will now proceed to address the issues raised by the motions to dismiss filed herein by the defendants, treating first the issues raised by the corporate defendants, then those raised by the state defendants and, lastly, those raised by the city defendants.

## CORPORATE DEFENDANTS

■ The *first* issue raised by defendants in their motions to dismiss deals with the right of defendants to act in concert to influence government action. Defendants' position is that there is nothing illegal about attempts by corporations to influence the passage and enforcement of laws. On the contrary, the First Amendment to the Constitution protects such conduct. In support of their position defendants cite *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *E. R. Conf. v. Noerr Motors*, 365 U.S. 127, 31 S.Ct. 523, 5 L.Ed.2d 464 (1961); and *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In *Pennington* the Court said clearly that efforts to influence public officials do not constitute illegal conduct. The language appearing in *Noerr* and in *California Motor* in no wise works any dilution of this principle. In *Noerr*, which preceded *Pennington* temporally, the Supreme Court pointed out that the freedom to petition is protected even to the extent that deceptive and unethical methods used by corporate lobbyists would not work a deprivation of the right to exercise the freedom. In *California Motor, supra*, the Supreme Court, at page 510, after quoting pertinent language from *Noerr*, said

The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.

What we have been saying here is that the "restricted list" referenced by plaintiffs in their Amended Complaint cannot be used by them as the basis for charging defendants with a conspiracy to influence government action even if they did in fact influence its contents or publication. To hold such an attempt to influence as actionable would be unconstitutional.

■ In discussing the *second* issue, that of standing, it is important to make several observations. One reading the Amended Complaint is at a loss to find any specific allegations against any individual corporate defendant. The corporate defendants have been lumped together and referred to as an amorphous mass. One looks in vain for any claim that any of the plaintiffs applied to any one of defendant corporations for employment or that any of the plaintiffs was refused employment by any of defendant corporations. The absence of such allegations by any of the named plaintiffs is of course a failure to establish standing as to each, and, therefore, constitutes a fatal deficiency in the pleading of a class action. *East Texas Motor Freight System v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). If the individual plaintiffs themselves have no standing they are equally in the position of being unable to maintain this lawsuit. The United States Supreme Court has addressed the issue of standing in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), a case strikingly similar to the instant one. Justice Powell, writing for the Court, described that action as follows:

Petitioners, various organizations and individuals resident in the Rochester, N.Y. metropolitan area, brought this action in the District Court for the Western Dis-

trict of New York against the Town of Penfield an incorporated municipality adjacent to Rochester, and against members of Penfield's Zoning, Planning, and Town Boards. Petitioners claimed that the town's zoning ordinance, by its terms and as enforced by the defendant board members, respondents here, effectively excluded persons of low and moderate income from living in the town, in contravention of petitioners' First, Ninth, and Fourteenth Amendment rights and in violation of 42 U.S.C. §§ 1981, 1982, and 1983. [p. 493, 95 S.Ct. at p. 2202.]

With respect to standing Justice Powell stated that

In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. (*Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . ." [pp. 498–499, 95 S.Ct. p. 2205.]

Applying these principles to the plaintiffs in *Warth* the Court went on to say that

But the fact that these petitioners share attributes common to persons who may have been excluded from residence in the town is an ·nsufficient predicate for the conclusion that petitioners themselves have been excluded, or that the respondents' assertedly illegal actions have violated their rights. Petitioners must al-

lege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, "none may seek relief on behalf of himself or any other member of the class." [p. 502, 95 S.Ct. p. 2207.]

Further—

We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review" or that relief can be framed "no broader than required by the precise facts to which the court's ruling would be applied." [Citations omitted.] [p. 508, 95 S.Ct. p. 2210.]

The Court in *Warth* concludes with this paragraph:

The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. We agree with the District Court and the Court of Appeals that none of the petitioners here has met this threshold requirement. [pp. 517–518, 95 S.Ct. p. 2215.]

Applying the teaching of *Warth* to the instant case the conclusion is compelled that plaintiffs here lack standing to present the claims they make in the instant Amended Complaint.

The *third* issue raised by the defendants in support of their motions to dismiss concerns the court's jurisdiction of the Title VII claim. A prerequisite to the filing of a Title VII complaint in a United States District Court is the exhaustion of certain prescribed remedies. A person must file a discrimination charge with the EEOC *and* receive a right-to-sue letter from the EEOC before filing a Title VII complaint in federal court. He must also file his Title VII complaint timely. Absent these, the federal court has no jurisdiction over his Title VII complaint. There is a plethora of cases in support of this requirement. The Sixth Circuit in a per curiam opinion in *Jerome v. Viviano Food Co.*, 489 F.2d 965 (6th Cir. 1974) quoted from *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) as follows:

> A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief. [p. 966.]

The Court, at page 966, went on to quote from its own opinion in *Goodman v. City Products Corp.*, 425 F.2d 702 (6th Cir. 1970) as follows:

> Compliance with the statutory requirements is a prerequisite to the institution of a civil action based on the statute.

In the instant Amended Complaint plaintiffs fail to allege exhaustion of the requisite administrative remedies. They refer to a right-to-sue letter issued by the Michigan Civil Rights Commission, received by them November 27, 1975. The Amended Complaint herein was filed April 15, 1976. Even if the right-to-sue letter had been an EEOC letter, the plaintiffs would be out of court because the requirement of filing within 90 days after receipt of the letter was not met—the time elapsed was four and one-half months, not 90 days. In any event, the requirement of an EEOC right-to-sue letter was not met. Plaintiffs' Title VII claim is jurisdictionally defective.

The *fourth* issue raised by the corporate defendants in their motions to dismiss relates to plaintiffs' claim under 42 U.S.C. §§ 1981 and 1982.

Section 1982 applies to racial discrimination with respect to inheriting, purchasing, leasing, selling, holding and conveying real and personal property. *Jones v. Mayer*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). In no conceivable way can the Amended Complaint herein be construed to state a claim under Section 1982.

Section 1981 reads as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This section has been construed as proscribing racial discrimination and only racial discrimination. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Section 1981 does not cover claims of sex, religious or national origin discrimination. It therefore behooves a plaintiff in alleging a § 1981 violation in employment to claim that *because of his race* he was in some way prejudiced employment-wise—in applying, in being rejected, in obtaining a job, etc. The Amended Complaint herein is devoid of such allegations, singly or numerously. Paragraph 12.P. of plaintiffs' Amended Complaint sets forth the statement of plaintiffs that presumably is covered by their § 1981 claim. It is as follows:

P. *"Disadvantaged" Definition Obscures Discrimination.* Defendant MESC classifies many employment applicants as "disadvantaged," although they fail to meet the criteria for "the uniform definition of disadvantaged" according to Federal Labor Department directives. Such a policy, practice, custom and usage discriminated against and continues to discriminate against plaintiffs and represented

class, poverty-level disadvantaged, for whom priority services were required to assure equal opportunity to compete. Variation in classification in centralized reporting of service to "disadvantaged" by design, intent and purpose or effect results in significant service reported in behalf of disadvantaged employment applicants in referrals and job placement. At the same time, plaintiffs believe and allege that defendants' conspiratorial and exclusionary patterns and practices are disguised, unlawfully covered-up, while plaintiffs and the class they represent continue to be barred, as they have been from the beginning of their enrollment in CEP, from employment opportunities available to less or non-disadvantaged and white male employment applicants who are, for purposes of reporting, classified as "disadvantaged."

Plaintiffs do not allege that because of their race they were denied employment or that they were classified in such a way as to deny them employment because of their race. Such classification as non-disadvantaged is not within the purview of § 1981. There is no basis for any assumption as to the race of non-disadvantaged persons, vis-a-vis disadvantaged persons. Any discrimination as to "disadvantaged" persons cannot be translated into racial discrimination actionable as violative of § 1981. The Amended Complaint herein does not state a cause of action under § 1981.

■ The *fifth* issue raised by the corporate defendants' motions to dismiss relates to Title VI of the Civil Rights Act of 1964 and to 42 U.S.C. § 1983. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* reads as follows:

No person in the United States shall on the ground of race, color or national origin be excluded from participating in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

Obviously the thrust of the Act is aimed at programs or activities receiving Federal financial assistance. The concept of the employment activities of these corporate defendants' receiving Federal financial assistance is a startling one. Suffice it to say that plaintiffs nowhere in their Amended Complaint suggest or allege that such is the case. Absent the "Federal financial assistance" there is no claim stated under Title VI.

■ The § 1983 claim as against the corporate defendants is another startling one. The United States Supreme Court in *Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 said:

The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

How it is possible for private employers to act "under color of law" is a mystery to this Court. And plaintiffs' Amended Complaint offers no clarification, no reference to any actions by the corporate defendants alleged to be "under color of law." The Supreme Court has stated that "it remains true that one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, —— U.S. ——, ——, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). " 'The act only gives a remedy.' " The Complaint, therefore fails to state a claim under § 1983.

■ The *sixth* issue raised by defendants in their motions to dismiss relates to plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986. Section 1986 is dependent on 1985. Section 1986 only comes into play if a cause of action exists under § 1985. If a claim cognizable under § 1985 is not stated there is no recovery possible under § 1986. *Hamilton v. Chaffin*, 506 F.2d 905, 913–914 (5th Cir. 1975).

Section 1985 consists of three subsections —(1), (2) and (3). Subsection (1) concerns a conspiracy to "prevent by force, intimidation, or threat" a public official from performing the duties of his office. Subsection (2) concerns obstruction of justice, conspiracy "to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying . . . for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice . . . with intent to deny any citizen the equal protection of the laws . . . ." The foregoing constitutes only excerpts.

Since an examination of subsections (1) and (2) discloses that they are so completely extraneous to any allegation in the Amended Complaint, it is concluded that plaintiffs' claim under § 1985 must perforce be under § 1985(3). Subsection (3) reads as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspir-

acy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Defendants' grounds for dismissal of the § 1985(3) claim are that plaintiffs have failed to allege a conspiracy in which the corporate defendants participated, failed to allege a class-based animus behind any alleged conspiracy, and failed to allege an injury to their persons or property as a result of actions taken in furtherance of any alleged conspiracy. In *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) the Supreme Court set forth the guidelines for measuring the sufficiency of a complaint under § 1985(3).* The Court stated as follows:

We return to the petitioners' complaint to determine whether it states a cause of action under 1985(3) as so construed. To come within the legislation a complaint must allege that the defendants did (1) "conspire to go in disguise on the highway or on the premises of another." (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (three) did, or cause to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

■■■ Paragraph 10 of plaintiffs' Amended Complaint (p. 6, *supra*, herein) which bears the heading "STATEMENT OF CLAIM" refers to "an unlawful agree-

* See also, *Great American Federal Savings & Loan v. Novotny*, —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

ment between the Michigan Employment Security Commission (MESC) and many major industrial employers in Detroit and the surrounding community . . . ." This does not constitute an allegation that the corporate defendants herein are part of the unlawful agreement, nor does this paragraph identify the "major industrial employers," nor does it allege that the corporate defendants conspired against anyone, nor does it allege that the corporate defendants even knew of the existence of the alleged conspiracy. Test (1) under *Griffin* is not met. Test (2) under *Griffin* is not met either, since plaintiffs do not allege the necessary class-based purpose to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The composition of the class is not defined. Having failed to plead a well-defined class plaintiffs have failed to meet Test (2) in *Griffin*. Under Test (4) in *Griffin* is the requirement that a plaintiff plead injury in his person or property or deprivation of having and exercising any right or privilege of a citizen of the United States. Nowhere in their Amended Complaint do plaintiffs allege injury to their persons or property. They allege no contract rights. They do not allege that they applied for any job for which they were qualified and failed to get while some non-minority applicant did. There is an absence of any allegation that plaintiffs suffered injury as a result of the alleged conspiracy.

The Court in *Griffin*, at page 102, 91 S.Ct. at page 1798, said that "the language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." No such animus has here been alleged. For the foregoing reasons plaintiffs herein have failed to state a claim under § 1985. Parenthetically it should here be stated that the treatment herein of § 1985 may now be purely academic in light of the decision of the United States Supreme Court, June 11, 1979, in *Great American Federal Savings & Loan v. Novotny*,

—— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957, a decision received by this Court after the preparation of this opinion. The rationale in that case provides yet another basis for holding that plaintiffs' § 1985 claim is not sustainable.

The *seventh* issue to be addressed herein is the corporate defendants' contention that the Amended Complaint does not comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure. Rule 8(a)(2), of course, provides that a Complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Amended Complaint herein does violence to the three requirements contained in Rule 8(a)(2). A 31-page Complaint is is not short—as far as can be determined there is only one count. As far as containing a plain statement is concerned, there is a consensus in the more than 30 briefs filed on behalf of defendants that there is nothing plain on any of the 31 pages comprising the Amended Complaint. This Court shares that view. This being so, it is impossible to conclude that the not short and not plain "statement" states a claim showing that the pleader is entitled to relief.

The "fair notice" principle is still required to be adhered to. The short and plain statement of the claim must give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The pleading must give fair notice of the alleged wrong. *Marshall v. Electric Hose & Rubber*, 65 F.R.D. 599, 603 (D.Del.1974). Here again the pleading fails to give notice, much less fair notice. It is only possible to guess or surmise what plaintiffs' claims actually are in this pleading labelled Amended Complaint. It is on such basis that this large number of defendants has attempted to compose and present these motions to dismiss. And it is on such basis that the Court has attempted herein to deal with the juxtaposition of these motions and the Amended Complaint. Plaintiffs' Amended Complaint fails totally to conform to the

requirements of Rule 8(a)(2), and on this ground alone is subject to dismissal.

▮ Two points remain to be dealt with briefly. Plaintiffs allege jurisdiction under 42 U.S.C. § 1988. It is to be noted that § 1988 creates no rights and confers no jurisdiction. It is a statute dealing purely with procedural matters, so any claims ostensibly made by plaintiffs under § 1988 are not maintainable. The second point not previously discussed herein concerns pendent claims alleged in the first paragraph of the Amended Complaint as arising under "Article I Section 2 of the Michigan Constitution of 1963 and the Michigan Fair Employment Practices provisions of M.C.L.A. Section 423.301." As to the pendent claims, they of course have no independent federal jurisdiction and cannot continue if the federal claims are dismissed.

What has been said in the foregoing pages of this Memorandum comprises the basis for the Court's ordering this case dismissed for lack of jurisdiction as to the corporate defendants.

## NON–CORPORATE DEFENDANTS

The non-corporate defendants also have filed motions to dismiss herein. These defendants may be classified in three categories: federal, state and city.

▮ There is one defendant in the *first* category, the United States Secretary of Labor. He has moved to dismiss on the grounds of (1) failure to exhaust administrative remedies under Title VI of the Civil Rights Act of 1964 and (2) the lack of jurisdiction over the subject matter of the Amended Complaint herein as the United States has not waived its sovereign immunity. What has been said previously herein is dispositive of the "exhaustion" issue. The Amended Complaint herein, at page 2, states that "[t]he jurisdiction of the Court is invoked pursuant to 42 U.S.C. Section 2000e–5(f), 28 U.S.C. Sections 1331, 1337, 1343 and 1361; also, 42 [28] U.S.C. Sections 2201 and 2202." Sections 2201 and 2202 provide for the remedy of a declaratory judgment. There is no way to construe

them as a waiver of immunity. These sections have been construed on numerous occasions as being procedural and as not supplying an independent ground of jurisdiction. *Rolls-Royce Limited, Derby, England v. United States,* 364 F.2d 415, 176 Ct.Cl. 694 (1966); *Lear Siegler, Inc. v. Adkins,* 330 F.2d 595 (9th Cir. 1964); *Skelly Oil Co. v. Phillips Petroleum Company,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Section 1337 of Title 28 provides for original jurisdiction of civil actions arising under acts of Congress "regulating commerce or protecting trade and commerce against restraints and monopolies." This is obviously not a statute providing for waiver of sovereign immunity nor can any such waiver be inferred from its language. With respect to Sections 1331 and 1361 of Title 28 the case of *Commonwealth of Kentucky v. Ruckelshaus,* 362 F.Supp. 360, 367–368 (W.D.Ky. 1973) *affirmed* 497 F.2d 1172 (6th Cir. 1974) has the following to say:

28 U.S.C. Section 1331 has never been construed as a waiver of the sovereign immunity of the United States from suit. *E. g., Anderson v. United States,* 229 F.2d 675 (C.A.5, 1956); *Cotter Corporation v. Seaborg,* 370 F.2d 686 (C.A.10, 1966). Moreover, the Declaratory Judgment Act, 28 U.S.C. Sections 2201, 2202, is procedural in nature and does not enlarge the jurisdiction of the district courts or waive the sovereign immunity of the United States. *E. g., White v. Administrator of General Services Admin.,* 343 F.2d 444 (C.A.9, 1965); *Donnely v. Mavar Shrimp & Oyster Co.,* 190 F.2d 409 (C.A.5, 1951). As has been decided on many occasions, 28 U.S.C. Section 1361 did not waive sovereign immunity since it was only intended to ease the burden of proceeding against officials formerly suable only in the District of Columbia. *E. g., Jarrett v. Resor,* 426 F.2d 213 (C.A.9, 1970); *Carter v. Seamans,* 411 F.2d 767 (C.A.5, 1969). Although the plaintiff also invokes the Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States, it is settled beyond doubt that constitutional provisions have no effect upon the sovereign immunity from suit.

*E. g., Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

█ Section 1343 of Title 28, providing for original jurisdiction in the district courts for certain civil rights violations, has been held not to constitute a waiver of sovereign immunity. *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972). It is clear that the United States has not consented to be sued and has not waived its sovereign immunity under any of the statutory provisions pursuant to which the instant action has been brought. This Court has no jurisdiction of this action against the United States Secretary of Labor.

The *second* category of non-corporate defendants consists of those defendants falling into the state classification. They are:

KEITH E. MOLIN, Director, Michigan Department of Labor and ex officio Michigan Employment Security Commission;

S. MARTIN TAYLOR, Director, Michigan Employment Security Commission;

FRANK C. PADZIESKI, Chairman, Michigan Employment Security Commission;

WALTER A. CAMPBELL, Member, Michigan Employment Security Commission;

ALEXANDER FULLER, Member, Michigan Employment Security Commission;

RAYMOND M. LYONS, Member, Michigan Employment Security Commission—

All of the above Commissioners in their individual capacities, and as representatives of Employers and Unions;

MICHIGAN EMPLOYMENT SECURITY COMMISSION;

ROBERT BAKER, Director, Bureau of Employment Services, Michigan Employment Security Commission;

THOMAS H. MASSEY, Manpower Services Director, Manager of Employment Services Staff subcontracted to CEP, now CETA.

These defendants have moved to dismiss the Amended Complaint herein for the following reasons:

1. That plaintiffs have not stated a cause of action under Title VII of the Civil Rights Act of 1964, as amended, upon which relief can be granted because (a) they have failed to meet the requirements of section 706(f)(1) of the Civil Rights Act, as amended; (b) they have failed to plead sufficient facts to establish the basic jurisdiction of this court; and (c) they have failed to state sufficient factual allegations to establish their claim.

2. That this Court does not have jurisdiction under 28 U.S.C. § 2201 as plaintiffs have failed to allege an actual case in controversy.

3. That since the plaintiffs seek a money judgment, the defendant Michigan Employment Security Commission, which is an instrumentality of the State of Michigan, ·is immune from suit in Federal Court by virtue of the Eleventh Amendment of the United States Constitution.

4. That the individual state officers who are sued in their official capacities stand in the same posture as the defendant Michigan Employment Security Commission and are, therefore, immune from suit in Federal Court by virtue of the Eleventh Amendment of the United States Constitution.

█ With respect to the *first* reason part (a) stated above, the state defendants' argument boils down to the lack of the EEOC right-to-sue letter, the same argument urged by the corporate defendants and previously discussed in this opinion. The state defendants allude to the reliance placed by the plaintiffs in their Amended Complaint on the Michigan Civil Rights Commission's letter of November 25, 1975 as satisfying the requirement for an EEOC right-to-sue letter. The requirement of an EEOC right-to-sue letter is not satisfied by a comparable letter from a state agency. There is no substitute for the required right-to-sue letter such as to confer Title VII jurisdiction herein.

Parts (b) and (c) of the first reason are based on lack of jurisdictional amount and lack of specificity. The jurisdictional

amount aspect does not warrant discussion. It is obviously without merit. As for the lack of specificity in that the ·Amended Complaint abounds in conclusory allegations unsupported by factual allegations, this contention is made by all the defendants in this action and not without justification. The state defendants are here saying, along with the corporate defendants, that plaintiffs have failed totally to comply with Rule 8(a)(2). This Court agrees.

The *second* reason advanced by the state defendants in support of their motion to dismiss is that "there is no actual case in controversy within the meaning of 28 USC § 2201," the Federal Declaratory Judgment Act.

The Court is not impressed that 28 U.S.C. § 2201 gives or takes away jurisdiction. As previously stated, this section is procedural. Defendants cite cases for the proposition that the Act is not intended to confer jurisdiction for the rendering of advisory opinions. Whatever one may say about lack of clarity in plaintiffs' Amended Complaint, it is crystal clear that plaintiffs are not seeking merely an advisory opinion. Again, the thrust of the state defendants' position with respect to 28 U.S.C. § 2201 is the lack of specificity and failure to conform to rule 8(a)(2) FRCP.

The *third* and *fourth* reasons on which the state defendants ground their motion to dismiss are immunity "from suit in Federal Court by virtue of the Eleventh Amendment of the United States Constitution."

The Eleventh Amendment, although by its terms barring suits against a state by citizens of another state, has been construed to also bar suits against a state by its own citizens. This interpretation is well settled and was reaffirmed in *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1361 (9th Cir. 1977). Eleventh Amendment immunity has been held to extend to the state and to its agencies. In *United States v. State of South Carolina*, 445 F.Supp. 1094, 1099 (D.S.C.1977) *affirmed* 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978) the Court stated as follows:

We conclude as a preliminary matter that the plaintiff-intervenors' causes of action under the Fourteenth Amendment against the State and the three State agencies are barred by the Eleventh Amendment. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1970), does not explicitly authorize suits against states and therefore cannot be used to circumvent the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The claims for monetary and injunctive relief under the Fourteenth Amendment are barred because a state is not divested of its immunity "on the mere ground that the case is one arising under the Constitution or laws of the United States." *Parden v. Terminal R. Co.*, 377 U.S. 184, 186, 84 S.Ct. 1207, 1209, 12 L.Ed.2d 233 (1964), quoting *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The state agencies, by the nature of their responsibilities, function as an arm or "alter ego" of the State and are, therefore, protected by the State's immunity. *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir. 1971).

In *Gill v. Monroe County Dept. of Social Services*, 79 F.R.D. 316, 335 (W.D.N.Y.1978) decided after *United States v. State of South Carolina, supra,* and after *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that:

State agencies are subject to suits under both §§ 1981 and 1983. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977). The eleventh amendment, however, precludes an award of monetary relief against the state agencies and against the individual state defendants acting in their official capacities.

It is therefore, clear that the state defendants are immune from suit for monetary damages by virtue of the eleventh amendment. Insofar as non-monetary relief is sought the Amended Complaint herein differs from that in *Gill* where the Court

found that the complaint contained sufficient allegation of personal wrongdoing on the part of the state defendants to survive the defendants' motion to dismiss. In the instant action the Court concludes that there is strikingly insufficient allegation of personal wrongdoing on the part of the state defendants. The state defendants' motion to dismiss the Complaint herein is well taken.

The *third* category of non-corporate defendants is the city defendants. They are:

COLEMAN R. YOUNG, Mayor, City of Detroit;

FRANK L. BIGHAM, Director, Manpower. Dept. City of Detroit, CETA Director;

MANPOWER DEPARTMENT OF THE CITY OF DETROIT, formerly concentrated Employment Program (CEP) of the City of Detroit;

LEON W. SHEARER, formerly CEP Director, now Director of Information, Manpower Department, CETA, City of Detroit.

They move to dismiss on 11 enumerated grounds. These grounds may fairly be considered as embracing the same issues as those advanced by the corporate defendants and by the state defendants. Insofar as the motion to dismiss is based on the contention that the city is not a person within the meaning of the Civil Rights statutes, that issue has been decided adversely to defendants in *Monell, supra.*

█ The other issues raised by the city defendants include the lack of timeliness of filing charges with both the Michigan Civil Rights Commission and the EEOC, the lack of an EEOC right-to-sue letter, the nontimely filing of the Amended Complaint herein, the lack of allegation of sufficient facts "to show that the named defendants are guilty of discrimination in violation of these statutory and constitutional provisions," § 1981 lack of jurisdiction because the statute is not applicable to sex discrimination, lack of § 1982 jurisdiction "because the Amended Complaint fails to allege the acts of discrimination which violate that statute," lack of § 1983 jurisdiction "be- cause the Amended Complaint fails to allege facts sufficient to show State action or action under color of State law by the defendants named herein," lack of §§ 1985 and 1986 jurisdiction "because the Amended Complaint fails to allege facts sufficient to show the existence of a conspiracy involving the City defendants," lack of § 1988 jurisdiction "because that statute neither confers jurisdiction nor creates a cause of action," and several other issues involving the immunity contention (not today sustainable).

The grounds thus enumerated have been dealt with hereinbefore and the same reasoning employed there is equally applicable here. It should be observed that in *Monell, supra,* the Supreme Court took pains to negative liability of municipalities on a *respondeat superior* theory. In that regard the Court said, 436 U.S. at page 691, 98 S.Ct. at page 2036:

On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

The Amended Complaint herein is barren of allegations of purported wrongful conduct of subordinates. The motion to dismiss of the city defendants sets forth valid grounds and should be granted.

IT IS HEREBY ORDERED that the Amended Complaint herein be, and the same is hereby DISMISSED in its entirety.