**F. B. BERKELEY**

v.

**UNITED STATES.**

No. 113–58.

United States Court of Claims.
April 6, 1960.

Stanford E. Parris, Alexandria, Va., for plaintiff.

Earl L. Huntington, Arlington, Va., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

Plaintiff, the alleged holder of a note made by the Peoria Consolidated Manufacturers, Inc., a Government contractor, to Jefferson Trust and Savings Bank of Peoria, Illinois, said contractor's assignee, seeks to recover the amount of $12,822.45 purportedly due from the United States to Peoria Consolidated Manufacturers, Inc.

Defendant has filed motion for summary judgment and in its brief in support thereof contends (1) that plaintiff is not in privity of contract with the United States; (2) plaintiff acquired no rights against the United States by reason of her financial transactions with the contractor's assignee; and (3) plaintiff's petition fails to state a claim against the United States upon which this court may grant relief.

Defendant's first contention simply stated is that plaintiff was not a party to the facilities contract between the United States and Peoria Consolidated. That any dealing regarding the purchase of the machine in question by the contractor from plaintiff was a matter between the contractor and plaintiff.

Defendant's second contention is that the statute prohibits voluntary assignments of any unallowed claim against the United States and prevents a person in plaintiff's position from acquiring any standing to sue the United States on the type of claim here presented.

Defendant's third contention is that plaintiff's claim, if any, is against private parties which cannot be litigated in this court and in any event no liability of the United States exists in this transaction.

We believe in the circumstances of this case as later disclosed that all three defenses asserted by the defendant are valid and are hurdles over which plaintiff cannot lift herself. However, plaintiff in her brief in opposition to defendant's motion for summary judgment takes the position that she was not a party to the contract nor was she an assignee of the contractor. "Her position is based solely on that of a subrogee to the right of the Jefferson Bank who is a valid assignee of the contractor."

In the light of the above position taken by plaintiff, the court will address itself in the main to that contention.

The facts as disclosed by the petition and exhibits are as follows:

Under date of June 30, 1952, defendant, represented by the Ordnance Corps, Department of the Army, entered into a "facilities contract" No. DA–11–022–ORD–1062 with Peoria Consolidated Manufacturers, Inc., under which the contractor was to procure for resale to defendant certain machine tools and facilities required in the performance of a certain supply contract covering cartridge storage cases.

Under the terms of Article II–A.1. of said facilities contract, the contractor was to be reimbursed "for such costs and expenditures as may be approved or ratified by the Contracting Officer." Pursuant to Article II–E.2. of the contract, payments for designated facilities procured by the contractor were to be made by the Government "upon inspection and acceptance in writing by the Contracting Officer" of such facilities, and certification and submission by the Contracting Officer to the Finance Officer of proper vouchers prepared by the contractor.

Thereafter, defendant received a notice dated September 24, 1952, of the assignment by the contractor of all monies due or to become due under said contract to Jefferson Trust & Savings Bank of Peoria, together with a copy of the instrument of assignment, and as of October 1, 1952, defendant acknowledged receipt of said notice.

The contractor prepared Bureau Voucher No. 78 in the amount of $12,-822.45 dated June 16, 1953, to the United States for payment to Jefferson Trust & Savings Bank of Peoria as the contractor's assignee. This voucher covered reimbursement to the contractor for the alleged purchase by it of a longitudinal seam welder under the provisions of said facilities contract from the Berkeley Equipment Company. The voucher, together with the seller's invoice and the contractor's receiving report covering this machine, was transmitted to defendant and was reviewed and "provisionally approved" by a Government auditor for the amount stated, "subject to audit prior to final settlement."

By letter dated October 26, 1953, defendant advised the contractor that payment was being temporarily withheld pending investigation of a report that the machine did not give proper performance. By letter dated December 28, 1953, from the attorneys representing Berkeley Equipment Company and plaintiff, defendant was advised, among other things, that at the time of the purchase of the machine Peoria Consolidated Manufacturers, Inc., was unable to pay for it and, therefore, could not present a voucher to the Government for reimbursement; that the assignee bank would not extend further credit to the contractor without cash collateral; and that:

"The Berkeley Company was advised that the only way it could get its money in this matter was to put up cash collateral for the note of the Peoria Consolidated Manufacturers with the Jefferson Trust & Savings Bank, which bank would then advance on this note a sum sufficient to pay the Berkeley Equipment Company, and then the voucher could be sent in for payment, the proceeds of which were assigned as security for the advance. In accordance with the foregoing, F. B. Berkeley borrowed $21,265.85 from a bank in Danville and deposited this sum as cash collateral for the note of the Peoria Consolidated Manufacturers, Inc., which deposit of collateral was secured by the assignment of the proceeds of contract #1062 as above mentioned. Berkeley was advised that as soon as the vouchers were paid the collateral would be released. One voucher #67 dated September 8, 1953 in the amount of $8,443.40 was paid and this amount of collateral was released to Berkeley. However, for some reason unknown to us, voucher #78 has not been paid and consequently the Jefferson Trust & Savings Bank is still holding $12,-822.45 of the Berkeley collateral."

The Contracting Officer did not accept the welder for reimbursement and did not certify or approve the voucher for payment. Bureau Voucher No. 78 was not paid. The contractor was adjudicated a bankrupt; and on March 12, 1954, an order was entered in said bankruptcy proceedings which recited, among other things, that the United States acknowledged indebtedness in the amount of $19,-992.61 to the contractor's assignee under the assignment, that such indebtedness was "in full compromise of all vouchers that have been submitted by the bankrupt corporation for payment, that the bankrupt corporation acknowledges such indebtedness to be in full compromise of vouchers that have been submitted for payment in the past, or which might be submitted by the bankrupt corporation in the future."

On July 1, 1954, plaintiff filed a claim in the bankruptcy of Peoria Consolidated Manufacturers, Inc., and on July 6, 1954, filed her amended claim on the date dated September 8, 1953, in the amount of $12,-822.45 from the contractor to Jefferson Trust & Savings Bank of Peoria, of which plaintiff is allegedly the holder,

and which is the purported basis of plaintiff's claim in this suit.

By Supplemental Order of the Bankruptcy Court dated February 10, 1955, $5,783.83 in the hands of the Jefferson Trust & Savings Bank was ordered paid to plaintiff. Plaintiff received the $5,783.83 by check from the Jefferson Trust & Savings Bank, dated May 6, 1955.

On March 17, 1958, plaintiff filed her petition in this court alleging, among other things, that Bureau Voucher No. 78 represents a portion of the assignment monies due under said Government contract; that plaintiff is the beneficial owner of said bureau voucher and that the voucher is held by the contractor's assignee to apply the proceeds thereof to the contractor's aforesaid note; and that plaintiff as the owner of the note is entitled to the proceeds of said Bureau Voucher No. 78 from the United States.

What happened to the machine we do not know. We assume, however, that the United States retained possession of it, inasmuch as it compromised and paid $19,992.61 for all vouchers that had been submitted by the bankrupt corporation for payment, and the bankrupt corporation acknowledged this amount to be in full settlement of all vouchers that had been submitted by the bankrupt corporation in the past or which might be submitted in the future. Voucher No. 78, covering the machine in question, therefore must have been included in the compromise.

How the plaintiff became the holder of the note, as alleged in the petition, we do not know. If the bank assigned the note to plaintiff, it is obviously in violation of the anti-assignment statute. 31 U.S.C. § 203. We can only assume that the bank when it applied the cash collateral to payment of the note merely turned the note over to plaintiff. Why the bank did not surrender the note to the maker, Peoria Consolidated Manufacturers, Inc., is something else not explained by the pleadings and exhibits.

■ If on the other hand plaintiff is, as alleged in her brief, a surety and the bank settled away her rights, the wrong was that of the bank and not the United States. Consequently, the controversy then would be between private parties and not between the plaintiff and the United States and would embrace a claim without the jurisdiction of this court. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058.

■ As a matter of fact, plaintiff's amended claim in the bankruptcy proceedings has been allowed and the Jefferson Bank, as trustee, under order in the bankruptcy proceedings, has paid to plaintiff the sum of $5,783.83. The order further recites:

"b. That any further payments received by said Jefferson Trust and Savings Bank of Peoria, as Trustee and Assignee, on Bureau Voucher 78, hereinabove referred to as BUV78, shall be held by said "bank" as Trustee until further order of this court with respect to disbursement of said sum either to R. Hardin McCoy, as Trustee in Bankruptcy herein, or to said F. B. Berkeley respondent herein, as their interests may appear at that time."

Thus it seems clear that plaintiff surrendered any right of action on the note by claiming on the bankruptcy proceedings. If she could prevail here, she would receive the amount of the note plus the $5,783.83 already paid, and anything further the bank might receive on Voucher No. 78.

■ It follows that the United States, by the payment of $19,992.61, completely discharged its indebtedness to the bankrupt corporation's assignee. Plaintiff then, assuming she is the subrogee and is entitled to sue, steps into the shoes of the assignee bank, which has no claim of any kind against the defendant to which plaintiff could be subrogated. A subrogee stands in the shoes of the subrogor and has no better rights than those possessed by the latter. United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; Phoenix Insurance Co. v. Erie & Western Transpor-

tation Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Globe Indemnity Co. v. United States, 84 Ct.Cl. 587.

Since nothing could be owing by the United States under the contract, and there being no claim to which plaintiff could be subrogated, plaintiff in her petition has failed to state a claim against the United States.

Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

LITTLETON, Judge (Ret.); MADDEN and WHITAKER, Judges, concur.

JONES, Chief Judge, concurs in the result.