**ROLLS–ROYCE LIMITED, DERBY, ENG-LAND, a British Company**

v.

.The **UNITED STATES** and United Air-craft Corporation, Defendant-Intervenor.

No. 74–63.

United States Court of Claims.

July 15, 1966.

W. Houston Kenyon, Jr., New York City, for plaintiff; William T. Boland, Jr., Donald J. Lisa, and Kenyon & Kenyon, New York City, of counsel.

William W. Fleming, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

C. Blake Townsend, New York City, for defendant-intervenor; Carroll G. Harper, Byerly, Townsend, Watson & Churchill, New York City, and Russell M. Lipes, Jr., East Hartford, Conn., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge:

Plaintiff, a British corporation engaged in the manufacture of aircraft engines, has brought this action for patent infringement against the United States under 28 U.S.C. § 1498. Plaintiff is the owner of a United States patent which describes and claims a metal alloy used in the making of turbine blades of jet engines. The particular utility of the invention is said to lie in the fact that the alloy resists softening and deformation at extremely high temperatures. Plaintiff claims that the Department of Defense, without license or consent of plaintiff and without any other lawful right, procured certain internal combustion turbine engines from four domestic aircraft corporations which contained blades fabricated from alloys that are alleged to be described in and protected by its patent. Before defendant filed its answer, one of the four supplying manufacturers, United Aircraft Corporation, was granted permission to intervene as a third-party defendant in the action under Rule 28 of the court, on the grounds that: (1) it has a pecuniary interest in the subject matter of the litigation, in that it might, by reason of an indemnity agreement, be ultimately liable to defendant for a judgment rendered against the United States, and (2) that the representation of its interests by defendant alone might prove to be inadequate.

To this point, the case does not raise any problems of third-party practice novel to this court. United, as defendant-intervenor, however, has not limited itself to the mere presentation of its defenses to plaintiff's principal claim. It has proceeded further and asserted a counterclaim against plaintiff to recover damages for breach of contract in the sum of $500,000. Plaintiff has moved to dismiss the counterclaim as beyond this court's jurisdiction, because in the counterclaim affirmative relief by one private party against another is sought and because the contract in issue was not asserted, referred to, or relied upon by plaintiff in its petition. At the present juncture, we are concerned only with the resolution of this jurisdictional question.[1]

---

1. On December 11, 1964, 168 Ct.Cl. 367, 339 F.2d 654, the court denied motions for summary judgment of both defendant and the intervenor and sent the case to Trial Commissioner Donald E. Lane for further proceedings on the merits. Defendant filed its answer on September 7, 1965. The intervenor filed its answer and counterclaim on the same day.

In their respective answers, the Government and United each set up the defenses of invalidity, non-infringement, and an alleged license from plaintiff to United. This last defense is based upon a manufacturing agreement entered into by plaintiff and United on December 30, 1947, which purports to grant to United, under stated conditions, rights and licenses to sell and grant sub-licenses to other persons, corporations, and Government agencies.[2] Defendant was not a party to the agreement, but avers in its answer that as a result of its arrangements with United it was licensed to manufacture, use, and sell the accused engines and turbine blades to the same extent as United. The Government's pleading did not contain any counterclaim or prayer for cross-relief.

To support its contention that this court has jurisdiction to entertain the counterclaim, United urges that since plaintiff's petition averred nonexistence of a license and United specifically denied the same in its answer (and indeed affirmatively averred the existence of a license as a result of the manufacturing agreement), a direct controversy has been raised. It is argued that the license so put in controversy arises out of and is an integral and indispensable part of the transactions or occurrences that constitute the subject matter of the petition. In short, United asserts that since the effect or non-effect of the manufacturing agreement is an essential determination to be made in regard to the principal claim, the court has broad ancillary power, under Rule 21 and under Section 14 (b) of the Contract Settlement Act of 1944 (41 U.S.C. § 114(b) (1964 ed.)), to dispose of all questions arising out of the agreement and to adjudicate the rights and legal relations of all parties properly before it—even to the extent of

granting judgment on a counterclaim by an intervenor to recover damages against plaintiff for breach of contract.

■ Manifestly, the question of license is relevant to the defense of United and the Government to plaintiff's principal claim. The fact that the asserted counterclaim may have questions of fact in common with a defense to the main action, however, does not compel the conclusion that this court has jurisdiction to grant complete relief on all ancillary or related claims by the intervenor against the plaintiff. The powers of the court are to be ascertained from the acts of Congress creating and defining its jurisdiction, and we have been referred to no statute which confers jurisdiction on this court to enter judgment for United on the counterclaim it has filed.

■ The Contract Settlement Act of 1944 does not evince a congressional intent to confer such sweeping authority upon the court. The purpose of the statute was to enlarge the jurisdiction of the Court of Claims so as to cover certain aspects of modern third-party practice. Maryland Casualty Co. v. United States, 141 F.Supp. 900, 135 Ct.Cl. 428 (1956); Seaboard Surety Co. v. United States, 144 Ct.Cl. 686 (1959), cert. denied, Haltom City State Bank of Fort Worth v. Seaboard Surety Co., 359 U.S. 1001, 79 S.Ct. 1140, 3 L.Ed.2d 1031. However, we have held that the act is limited to situations in which the third-party defendants have an interest in a plaintiff's claim against the Government, which interest the third-party defendants might assert against the United States, or as a defense to the plaintiff's claim, or in connection with which the United States might assert a claim against the third party. Oliver-Finnie Co. v. United States, 137 F.Supp. 719, 133 Ct.Cl. 555

2. United maintains that the agreement provided for the payment of royalties with respect to certain licensed parts for engines of United's design and manufacture. It is asserted that plaintiff breached the agreement by concealing from United, contrary to a requirement of the agreement, plaintiff's use of the alloy constituting the invention of the patent in suit and wrongfully failed to add the same to the license. United claims that plaintiff is estopped to recover any royalties from United.

(1956); Weiss v. United States, 130 Ct. Cl. 815 (1955). It does not embrace actions by plaintiff against third parties, or by third parties against plaintiff to recover damages on causes of action not cognizable by this court. See 41 U.S.C. § 114(c).[3] Berkeley v. United States, 276 F.2d 9, 149 Ct.Cl. 549 (1960).

In Richfield Oil Corp. v. United States, 151 F.Supp. 333, 138 Ct.Cl. 520 (1957), this court held that the act did not cover a cross-claim asserted by an indemnifying third-party defendant against another third-party defendant alleged to have indemnified the cross-claimant. In that case, Richfield sued for the value of certain property taken by the Government in connection with the construction of a flood control project. The United States impleaded the Los Angeles County Flood Control District on the ground that the district had agreed to hold it harmless in such an event. The district summoned two officials of the State of California as additional third parties, alleging that the State had in turn agreed to indemnify the district. The court granted the motion of the State officials to dismiss the district's cross-claim, on the grounds that the Contract Settlement Act and the rules of the court did not "authorize the impleading of the contingent debtor's contingent debtor". The objectives of the statute and its application to the situation before it were summarized in the following language:

> The principal purpose of the statute was not, we think, to provide for the adjudication of all possible rights and obligations which might stem, however remotely, from the transaction involved in the principal suit. It was to permit the parties to bring in other persons who might, if not foreclosed, later show that they owned or had an interest in the claim sued on, or whose possible right might, if not foreclosed,

be used as a defense by the United States to defeat the principal claimant. It was also intended to permit the United States to bring in parties who were under a duty to save it harmless from judgments such as the one sought by the plaintiff, and to recover money from parties to which it had paid the money which it might be adjudged to have to pay to the plaintiff.

The alleged contingent liability of the State of California to the District, which would arise only if the contingent liability of the District to the United States were to become actual, does not fall within the purposes which we have suggested.

\*    \*    \*    \*    \*    \*

In the circumstances, we are not inclined to stretch the third party statute to the utmost possible limits, since it would seem that nothing useful would be gained by doing so. \* \* \* (151 F.Supp. at p. 335, 138 Ct.Cl. at pp. 522–523)

To allow United to assert its counterclaim in the present case would stretch the third-party statute beyond the limits urged by the third-party defendant and rejected by the court in *Richfield Oil*. In that case the third-party defendant wished to adjudicate the legal liability of its contingent debtor— a party whose ultimate liability was derived from the very claim asserted by the plaintiff against the United States. In the situation at hand, the third-party defendant is seeking to enforce a claim which is in fact no part of plaintiff's original action against the United States. It is not necessary to award damages to United for plaintiff's alleged breach of the 1947 Manufacturing Agreement in order to sustain United's defense to the principal claim that by the same agreement it was licensed to manufacture, use, and sell the engines

---

3. Section 14(c) of the act (41 U.S.C. § 114(c)) provides that:
   The jurisdiction of the Court of Claims shall not be affected by this chapter except to the extent necessary to give effect to this chapter, and no person shall recover judgment on any claim, or on any interest in any claim, in said court which such person would not have had a right to assert in said court if this section had not been enacted.

and blades in controversy. If the proof establishes that the manufacturing agreement did license United and defendant, they will have a complete defense to plaintiff's action. The coincidental facts that the questions of breach of contract and of license arise from the same instrument and that the party named by the intervenor in the counterclaim happens to be the plaintiff do not change the essential nature of United's counterclaim. It sets forth a separate cause of action—one which is beyond the authority of this court to decide.

■ United contends that the counterclaim against plaintiff is a "compulsory" one under Rule 21(a) of the court, and that it may claim relief exceeding in amount or differing in kind from that sought in the petition.[4] It is argued that the word "defendant" as used in Rule 21 applies to the United States and third parties alike, and that the very purpose of the rule contemplates the avoidance of piecemeal resolution of controversies between parties who are properly before the court. Although United is correct in stating that it is the aim of modern practice to dispose in one litigation of all rights and obligations existing between the parties involved,[5] this salutary principle may not be invoked to fill a jurisdictional void.

■■ Our Rule 21, when read by itself, or in conjunction with the other rules of the court,[6] or in the light of the decisions interpreting the jurisdiction of the court, does not contemplate our adjudication of the kind of counterclaim United has filed here. This is necessarily so, because the court cannot, through its acknowledged rule-making power, expand its jurisdiction beyond the limits prescribed by Congress. Graf v. United States, 24 F.Supp. 54, 87 Ct.Cl. 495 (1938). These conclusions are applicable whether the counterclaim be classed as a compulsory or as a permissive one.

■■ In the third prayer of its counterclaim, United seeks the entry of a declaratory judgment by this court to the effect that plaintiff's patent is invalid, that United has not used or manufactured any articles covered by the invention without license of the owner or lawful right, and that United has a continuing and royalty-free license under the patent in suit. It is clear that this portion of the counterclaim must also be dismissed. The cases are legion that the Declaratory Judgment Act cannot be used to give relief indirectly that cannot be given directly. The statute is a procedural one and does not supply an independent ground of jurisdiction where none otherwise exists.[7] Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617

---

4. Rule 21 reads in pertinent part as follows:

    (a) *Compulsory Counterclaim:* The answer shall state as a counterclaim any claim which, at the time of serving the answer, the defendant has against any plaintiff, if it arises out of the transaction or occurrence that is the subject matter of the petition and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction: * *

    (b) *Permissive Counterclaim:* The answer may state as a counterclaim any claim against a plaintiff not arising out of the transaction or occurrence that is the subject matter of the petition.

    (c) *Extent of Counterclaim:* A counterclaim may or may not diminish or defeat the recovery sought by a plaintiff. It may claim relief exceeding in amount or different in kind from that sought in the petition.

5. See, for example, Rule 13 of the Rules of Civil Procedure for the United States District Courts.

6. See Rules 18, 67, and 79; also 28 U.S.C. § 1503, which applies only to the United States.

7. The present Federal Declaratory Judgment Act (enacted June 25, 1948), reads as follows:

    *In a case of actual controversy within its jurisdiction,* except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declara-

(1937); Clark v. Memolo, 85 U.S.App. D.C. 65, 174 F.2d 978 (1949); Di Benedetto v. Morgenthau, 80 U.S.App.D.C. 34, 148 F.2d 223 (1945). In the case last cited, the court stated at page 225:

The Declaratory Judgment Act is designed to provide a remedy in a case or controversy, while there is still opportunity for peaceable judicial settlement "before blood has been drawn and tempers irretrievably lost." It is not its purpose to extend jurisdiction over an area not already covered or expressly forbidden.

Since we have already concluded that we have no jurisdiction of United's action for breach of contract against the plaintiff, it follows that we may not circumvent our lack of jurisdiction by granting United the relief sought under the Declaratory Judgment Act.

United argues, finally, that it intervened as a defendant in this action with the express consent of plaintiff,[8] and that since the counterclaim arises out of the same transaction as the defense of license, plaintiff should not be heard to complain that the counterclaim may not be maintained against it. It may be noted that United's motion itself alleged as one of the grounds for its intervention merely a "pecuniary interest in the proper and adequate defense of the action." No mention was made at the time of any intention to file a counterclaim for breach of contract, and plaintiff cannot be held to have waived its objections to this procedure. In any event, a lack of jurisdiction over the subject matter cannot be waived or overcome by agreement of the parties. Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934).

The counterclaim of the intervenor, United Aircraft Corporation, lies beyond

tion, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (28 U.S.C. § 2201 (1964 ed.)). [Emphasis supplied]

the jurisdiction of this court. Accordingly, plaintiff's motion to dismiss the same is granted and the case is returned to the trial commissioner for further proceedings on the merits.

8. On October 7, 1963, plaintiff objected to the motion to intervene, but on October 14, 1963, it withdrew its objections and stipulated with both defendant and United to the granting of the motion. The motion was accordingly granted by the court on October 18, 1963.