**SENTRY INSURANCE A MUTUAL COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 748–85C.

United States Claims Court.

April 13, 1987.

F. Joseph Nealon, Washington, D.C., for plaintiff.

David B. Stinson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Kirby Scarborough, Small Business Admin., of counsel.

## OPINION

MOODY R. TIDWELL, III, Judge:

This contract case comes before the court on cross-motions for summary judgment with respect to competing claims of Sentry Insurance A Mutual Company (Sentry) and the United States Small Business Administration (SBA). Sentry's claim is based on a surety's equitable right of subrogation. The Claims Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1491 (1982).

## FACTS

On June 13, 1979, the G.H. Coffey Company, Inc. (Coffey), a Vermont Corporation, executed a promissory note in the total principal amount of $300,000.00, plus interest, at the rate of 12 percent per annum to the order of Randolph National Bank. This promissory note was assigned by Randolph to the SBA, thereby giving the SBA a perfected first security interest in the accounts receivable, contract rights, and proceeds from the Coffey promissory note. The promissory note is now justly due and owing and has not been paid according to its tenor and effect.

Sentry issued payment bonds to Coffey for its work on two contracts awarded by the Department of the Navy.[1] Coffey completed performance of the work under both contracts but failed to pay all laborers and materialmen on the contracts. Pursuant to its obligations under the payment bonds, Sentry paid the various claims of Coffey's subcontracts on the two projects.

Coffey submitted claims to the Armed Services Board of Contract Appeals (ASBCA) for equitable adjustment on the two contracts. These claims were subsequently settled by Coffey and the United States whereunder Coffey would receive $40,100.00 in full satisfaction of its claims.

---

1. N622472–79–C–0257, High Frequency Antenna Site Construction, Naval Communications Unit and N62472–79–C–0190, New Dispensery, Naval Communications Unit, Cutler, East Machias, Maine.

By direction of the contracting officer, the Department of the Navy, Northern Division, Naval Facilities Engineering Command, Philadelphia, Pennsylvania, is currently holding the settlement amount of $40,100.00 and has been in possession of these funds at all times.

The United States claims a superior right to the contract proceeds (the $40,100.00 settlement) by virtue of the common law right of offset and the administrative offset provisions of 31 U.S.C. § 3716 and not by virtue of its security interests assigned to it by the Randolph National Bank. Sentry filed this action on December 19, 1985, alleging that it was entitled to the settlement funds. Sentry claims that, having paid various subcontractors of the contractor pursuant to payment bonds Sentry issued to Coffey, it is entitled to the contract proceeds based upon the equitable right of subrogation. In a letter dated November 21, 1985, the contracting officer determined that the Small Business Administration (SBA), to whom plaintiff owed money and was delinquent in its loan payments, had the highest priority to the contract funds over all known claimants, including Sentry.

## DISCUSSION

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, any doubt over whether there is a genuine issue of material fact must be resolved in favor of the non-moving party. *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982). The court is of the opinion that there are no genuine issues of material fact in dispute and that the case is properly before the court for disposition on cross-motions for summary judgment.

Sentry and the SBA are the only claimants to the contract balances, which the Navy is holding on two construction projects. Sentry alleges that its claim is superior to SBA's claim because, in this instance, the SBA operated as a quasi-commercial lender, not the United States of America in its role as a sovereign. Sentry relies on *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), for the proposition that the SBA is not entitled to special protection or priority when it acts as a quasi-commercial lender. *Id.* at 734–38, 99 S.Ct. at 1461–64. In *Kimbell Foods*, the Court stated:

> Both [the SBA and Farmers Home Administration] have promulgated exhaustive instructions to ensure that loan recipients are financially reliable and to prevent improvident loans. The Government therefore is in substantially the same position as private lenders, and the special status it seeks is unnecessary to safeguard the public fisc. Moreover, Congress' admonitions to extend loans judiciously supports the view that it did not intend to confer special privileges on agencies that enter the commercial field. Accordingly, we agree ... that "[a]s a quasi-commercial lender, [the Government] does not require ... the special priority which it compels as sovereign" in its tax-collecting capacity.
>
> The Federal Tax Lien Act of 1966 ... provides further evidence that treating the United States like any other lender would not undermine federal interests.

*Id.* at 737–38 (citations and footnotes omitted).

Defendant appropriately distinguishes *Kimbell Foods* on the bases that it did not involve: (1) the common law right to offset, and (2) the administrative offset provisions of 31 U.S.C. § 3716. *Kimbell Foods* was decided in the absence of a federal statute setting priorities and involved competing liens; whereas the present case involves

both a common law right to offset and an administrative offset provision.

## A. *Common Law Right to Offset*

When the prime contractor failed to pay some of its subcontractors on its two Navy projects, Sentry paid all subcontractor claims in accordance with its obligations on its payment bonds. Thus, Sentry requests this court to order the Navy to remit the contract balances to Sentry. In *Great American Insurance Co. v. United States,* 203 Ct.Cl. 592, 492 F.2d 821 (1974), the court recognized:

> It is well settled that the right of the United States to collect debts due it by a contractor, by offsetting these obligations against the funds retained under a Government contract, is superior to claims of a surety based upon the discharge of its obligations on its payment bond. *United States v. Munsey Trust Co.,* 332 U.S. 234 [67 S.Ct. 1599, 91 L.Ed.2d 2022, 108 Ct.Cl. 765] (1947); *United States Fidelity and Guaranty Co. v. United States,* 201 Ct.Cl. 1, 12, 475 F.2d 1377, 1383 (1973).

*Id.,* at 602, 492 F.2d at 828.

■ Sentry made payment to Coffey's subcontractors based upon its payment bonds and not its performance bonds. This court has recently noted:

> A payment bond surety is in a different situation [than a performance bond surety]. It does not protect the interests of the Government, but instead protects subcontractors, materialmen, and laborers by promising to pay their charges, to the extent of the penal sum, if the contractor fails to pay them. If a payment bond surety pays such creditors of the contractor, it becomes the subrogee of the contractor, and, as such, stands in the place of the contractor, with rights to retainages inferior to those of the Government on its claims against the contractor. *See United States v. Munsey Trust Co., supra,* 332 U.S. at 239, 67 S.Ct. at 1601.

*Transamerica Ins. Co. v. United States,* 6 Cl.Ct. 367, 372 (1984).

Sentry, as a subrogee, stands in the shoes of its subrogor, Coffey, and has no better rights than those possessed by the latter. *See Berkeley v. United States,* 149 Ct.Cl. 549, 555, 276 F.2d 9, 12 (1960). Sentry cannot, through subrogation, acquire rights not possessed by the one through whom the subrogee claims a right. Because Sentry made payment to Coffey's subcontractors based upon its payment bonds and not its performance bonds, Sentry is not the subrogee of the government and, therefore, has no rights to the funds held by the Navy. *Security Ins. Co. v. United States,* 192 Ct.Cl. 754, 760–64, 428 F.2d 838, 841–43 (1970); *Barrett v. United States,* 177 Ct.Cl. 380, 367 F.2d 834 (1966). Sentry is the subrogee of Coffey and, as such, may assert only the rights possessed by Coffey. Accordingly, Sentry's claim of subrogation does not provide it with rights superior to the SBA for the funds held by the government. The SBA does not seek "special priority" as a "quasi-commercial lender." *Kimbell Foods,* at 737–38, 99 S.Ct. at 1463. On the contrary, the SBA only seeks the "same right 'which belongs to every creditor, to apply the appropriated moneys of his debtor, in his hands, in extinguishment of the debts due him.'" *United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 67 S.Ct. 1599, 91 L.Ed. 2022, 108 Ct.Cl. 765 (1947) (quoting *Gratiot v. United States,* 15 Pet. 336, 370, 10 L.Ed. 759 (1841); *McKnight v. United States,* 98 U.S. (8 Otto) 179, 186, 25 L.Ed. 115 (1878)).

In *United States v. Munsey Trust,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, 108 Ct.Cl. 765 (1947), the United States had possession of certain payments for public contracts to which the surety claimed a right of subrogation and entitlement. The Court held that the surety could not recover against the United States because the Government was a creditor holding both the debit and credit accounts of the debtor. *Id.* In the present case, the United States has had possession of the contract proceeds at all times. Thus, the United States is in the most preferred position as holder of both a debit and a credit. Allowing the Navy to apply the common law right of offset in favor of the SBA is akin to merely

handling the construction balances from two construction projects as any other debtor would. Thus, the United States, represented here by the SBA, has rights superior to those of Sentry over the contract proceeds based on the common law right of offset.

## B. *Administrative Offset Provisions of 31 U.S.C. § 3716*

In addition to the common law right to offset, defendant argues that the administrative provisions of 31 U.S.C. § 3716 apply to the SBA's entitlement to the settlement amount.

Section 3716 provides that:

(a) After trying to collect a claim from a person ... an executive or legislative agency may collect the claim by administrative offset.

\* \* \* \* \* \*

(b) Before collecting a claim by administrative offset under subsection (a) of this section, the head of an executive or legislative agency must prescribe regulations on collecting by administrative offset....

31 U.S.C. § 3716 (1982).

The SBA has established regulations for administrative offset, which state, in part:

(a) SBA may, after attempting to collect a claim from a person under normal SBA collection procedures, collect the claim by means of administrative offset....

(b) Prior to collecting any claim through administrative offset, SBA shall provide the debtor with—

(1) Written notification, of at least 30 days, concerning the nature and amount of the claim, the intention of SBA to collect the claim through administrative offset, and an explanation of the rights of the debtor under paragraph (b) of this section;

(2) An opportunity to inspect and copy SBA's records with respect to the claim;

(3) An opportunity to enter into a written agreement with SBA to establish a schedule for the repayment of the debt; and

(4) An opportunity for the review, by SBA's Office of Hearings and Appeals in accordance with the provisions of Part 134 of these regulations, of SBA's determination of the existence of the claim. The administrative judge will issue a written final decision at the earliest practicable date....

13 C.F.R. § 140.5 (1986).

The SBA pursued its administrative offset rights against Coffey pursuant to 31 U.S.C. § 3716. The SBA notified Coffey that:

[B]ecause you have neglected and failed to make suitable arrangements to pay off the outstanding balance on your delinquent loan, the Small Business Administration intends to pursue its administrative offset rights under 31 U.S.C. § 3716.

Letter from the SBA to Coffey (Aug. 1, 1984).

This letter also informed Coffey of its rights under 13 C.F.R. § 140.5.

The Department of the Navy contracting officer has determined that the SBA has the highest priority to the contract balances. The contracting officer's decision of November 21, 1985 stated:

Please be advised that it has been determined that within 30 days of the dated [sic] of this letter, payment of $41,100.00 under the subject contracts will be made to the Small Business Administration, it having been determined that the Small Business Administration has the highest priority of all known claimants. No payment will be made to the Small Business Administration if within 30 days of the date of this letter, litigation has been initiated by any of the above named claimants and the Contracting Officer has been notified.

Letter from contracting officer to Coffey (Nov. 1984).

This correspondence establishes that the SBA properly followed the administrative offset provisions of 31 U.S.C. § 3716, independent of a common law right of offset.

## CONCLUSION

Plaintiff's Motion for Summary Judgment is denied and Defendant's Cross-Mo-

tion for Summary Judgment is granted. The court is persuaded that defendant only seeks the right afforded to any other creditor—the right to offset. Thus, no special priority is sought by defendant. The Clerk of the court is directed to dismiss the Complaint.