RSH CONSTRUCTORS, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

Transamerica Insurance Co., Apache Building Products Co., Diversitech General, Inc., AAAA Roofing Co., Inc., and Briel, Rhame, Poynter & Houser, Architects & Engineers, Inc., Noticed Third Parties.

No. 446–89C.

United States Claims Court.

Feb. 28, 1990.

G. Kenneth Norrie, Jacksonville, Fla., for plaintiff and for Transamerica Ins. Co., noticed third party. Rogers, Towers, Bailey, Jones & Gay, of counsel.

Scott Ray, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

Michael A. Gordon, Washington, D.C., for noticed third party DiversiTech General, Inc.; William Gorenc, Jr., and Jones, Day, Reavis & Pogue, of counsel.

Duncan Dowling, Orlando, Fla., for noticed third party Apache Building Products Co.

Jonathan C. Hollingshead, Orlando, Fla., for noticed third party Briel, Rhame, Poynter, & Houser, Architects & Engineers, Inc.; Fisher, Rushmer, Werrenrath, Keiner, Wack and Dickson, P.S., of counsel.

## ORDER

FUTEY, Judge.

This case is before the court on motions to quash third party notices to appear issued by plaintiff and defendant pursuant to RUSCC 14(a)(1). DiversiTech General Inc., Apache Building Products Company, and Briel, Rhame, Poynter & Houser, Architects & Engineers, Inc., object to notice issued to them by plaintiff, while Transamerica Insurance Company objects to notice issued to it by defendant.

### Factual Background

This case first came before this court on June 23, 1987. An opinion granting defendant's motion to dismiss was filed on April 26, 1988. *RSH Constructors Inc. v. United States*, 14 Cl.Ct. 655 (1988). Since a full statement of the facts in the case was made a part of that earlier opinion, they will be given only an overview here.

On February 6, 1984, plaintiff contracted with defendant to construct a shopping center at Patrick Air Force Base, Florida. In order for construction to begin, on February 8, 1984, Transamerica Insurance Company (Transamerica) executed, as a surety, a performance bond for plaintiff in the amount of $3,289,350.00. The terms of the performance bond obligate Transamerica to fulfill the obligations of plaintiff under the contract if for any reason plaintiff fails in its performance.

In November 1984, while the construction continued, defendant occupied the premises and experienced problems with

the roof. Defendant informed plaintiff, the general contractor, of these problems. A few months later, on February 14, 1985, the final inspection occurred. At that time, defendant advised plaintiff that the roof was still unacceptable and that a "punch list" was being developed to catalogue items needing completion.

On June 25, 1986, the Contracting Officer (CO) issued a "final" decision which found the roof work unsatisfactory and directed plaintiff to take remedial action consistent with the contract specifications within sixty (60) days. Almost a year later, on June 23, 1987, plaintiff filed suit in the Claims Court, and made, in essence, the same allegations as in the instant suit. *RSH Constructors, Inc.*, 14 Cl.Ct. at 655.[1] However, before the merits of plaintiff's claims could be addressed, this court held that the CO's "final" decision of June 25, 1986, together with defendant's subsequent correspondence with plaintiff, "do not represent a government claim within the meaning of 41 U.S.C. § 605(a)." *RSH Constructors, Inc.*, 14 Cl.Ct. at 660. This suit was dismissed without prejudice for lack of jurisdiction.

Plaintiff subsequently filed another claim with the CO and on January 20, 1989, the CO issued a final decision (second decision) against plaintiff and found: that the roof on the project was defective and non-conforming in specified particulars; that corrective measures had been taken at defendant's expense; and that plaintiff owes defendant $225,849.88 in corrective costs.[2]

On August 16, 1989, plaintiff filed a complaint in this court seeking: (1) the sum of $45,765.00 found by plaintiff to constitute the remaining contract balance withheld by defendant and (2) in essence, a reversal of the second decision or, in the alternative, a reassessment of defendant's claim for corrective costs. Simultaneously with the filing of its complaint, plaintiff filed, pursuant to RUSCC 14(a)(1), a motion for notice to third parties to appear. In this motion, plaintiff identified the following parties as having an interest in the subject matter of this action: AAAA, Roofing Company, Inc. (AAAA), the roofing subcontractor on the project; DiversiTech General Inc., (DiversiTech), the manufacturer and supplier of the roofing membrane and warrantor of the roofing system for the project; Apache Building Products Company (Apache), the supplier of roofing insulation for the project; and, finally, Briel, Rhame, Poynter and Houser (BRP & H), the project architect. The court, on August 24, 1989, allowed this motion.

On November 11, 1989, defendant filed a motion for leave to request summons to a third party, or in the alternative, notice to third party to appear.[3] Defendant alleges that Transamerica, the surety who issued the performance bond for plaintiff, has an interest in the contract.

Motions to quash the third party notices were filed by Apache, DiversiTech, BRP & H, and Transamerica.[4] Plaintiff opposes these motions.[5] Defendant opposes Transamerica's motion. Oral argument on these

---

1. In that prior case, as here, notice to third parties to appear was issued. Some of the noticed third parties filed motions to quash. These motions were suspended pending disposition of defendant's motion to dismiss. As a consequence of the dismissal of the suit, they were never ruled upon.

2. Shortly after receipt of the second decision, plaintiff brought suit in the Florida State court system against the third parties which was subsequently stayed pending the Claims Court action. *RSH Constructors, Inc. v. AAAA Roofing Co. et al*, No. 89-0275-CA (Cir.Ct.Fla. August 25, 1985) (order abating proceedings pending disposition of related case). Apparently, this stay is still in effect.

3. Defendant's motion for notice to third party Transamerica Insurance Company (Transamerica) was allowed on November 17, 1989.

4. AAAA Roofing Company (AAAA) has not filed an appearance nor any pleadings with the court concerning the third party notice.

5. Although Transamerica joins with plaintiff in opposing these motions, Transamerica argues a contingent position: If DiversiTech General, Inc., (DiversiTech) and Briel, Rhame, Poynter and Houser (BRP & H) prevail, then Transamerica cannot be a party either. (Transcript of oral arguments on motions to quash, January 24, 1990, p. 25.)

**4**

motions was held on January 24, 1990.[6]

## Discussion

### A. Jurisdiction

Plaintiff alleges jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1982) (the CDA). The court finds that the January 20, 1989, decision of the CO constitutes a final decision for purposes of the CDA. Therefore, jurisdiction is proper here under the CDA.

### B. Motions To Quash Notice

The noticed third parties have two principal contentions in support of their motions to quash:

(1) the Rule 14 notice procedures (RUSCC 14(a)(1) and 14(c)(1)) as written and interpreted by this court are unconstitutional because they can bind noticed third parties to conclusions of fact and law; and

(2) there is no statutory basis for joinder of them as parties.

■ Addressing the first contention, RUSCC 14(a)(1) provides:[7]

> The court, on its own motion or on the motion of a party, may notify any person with legal capacity to sue and be sued and who is alleged to have an interest in the subject matter of any pending action to appear as a party and assert his interest (if any) therein. [Emphasis added.]

The standard for determining whether notice should be issued is whether the third party to whom notice is directed "appears" to have an interest in the subject matter of the proceedings. E.g., Philadelphia Suburban Corp. v. United States, 211 Ct.Cl. 354, 355 (1976). Even if the alleged third party interest in the suit is uncertain, an apparent interest is legally sufficient to support an issuance of notice. E.g., Del–Rio Drilling Programs, Inc. v. United States, 17 Cl.Ct. 844, 849 (1989). "Consequently, where the appearance of such an interest is present, any motion by a party litigant to quash such a notice must be denied." Id. (Citation omitted.)

■ RUSCC 14(c)(1) provides that a failure to appear shall result in that person being barred from later litigating any "claim or interest in the subject matter." "Third parties who choose not to appear will be precluded from retrying issues of law and fact already resolved in the third parties absence." Del–Rio Drilling Programs Inc., 17 Cl.Ct. at 849, citing Uram v. United States, 216 Ct.Cl. 418, 420 (1978); accord Myrtle Beach Pipeline Co. v. United States, 6 Cl.Ct. 363, 365 (1984). It is this "binding effect" on determinations of law and fact that movants object to here.

Court of Claims Rule 41(a)(1), the model for RUSCC 14(a)(1), was construed to allow "a third party to participate in litigation before this court, [however] it does not grant us jurisdiction to render a judgment for the plaintiff against such a party". Peoples Apparel, Ltd. v. United States, 226 Ct.Cl. 515, 517 (1980) (footnote omitted). In addition:

> [Rule 41(a)(1)] is limited to situations in which the third-party defendants have an interest in a plaintiff's claim against the Government, which interest the third party defendants might assert against the United States or as a defense to the plaintiff's claim, or in connection with which the United States might assert a claim against the third party. It does not embrace actions by plaintiff against third parties....

Id. (quoting Rolls Royce Ltd. v. United States, 176 Ct.Cl. 694, 698, 364 F.2d 415 (1966) (citations omitted).

In the case at bar, as discussed infra pp. 7–8, the allegations of the third parties' interests are based entirely on various claims by plaintiff against these private parties. As a result, this court holds that it cannot issue notice to these third parties.

---

6. Neither AAAA nor Apache Building Products Company (Apache) participated in this oral argument.

7. RUSCC 14(a)(1) is fashioned upon the Court of Claims Rule 41(a)(1) and is essentially identical for our purposes. See USA Petrochem Corp. v. United States, 4 Cl.Ct. 345, 346 (1984); see also Midwest Indus. Painting of Florida v. United States, 1 Cl.Ct. 209, 210 (1983).

*Peoples Apparel, Ltd.*, 226 Ct.Cl. at 517, 518. Therefore, the motions to quash of DiversiTech, Apache, BRP & H are granted.[8] However, Transamerica's interest permits issuance of notice, *see infra* p. 8, because it is based on Transamerica's status as a surety. *See Carrier Corp. v. United States*, 209 Ct.Cl. 267, 269, 534 F.2d 250 (1976). Therefore, the motion to quash of Transamerica is denied.

■ As an additional basis for disposition of these motions, the noticed parties raise the issue: Whether the "binding effect" of fact and law determinations on parties subject to notice under RUSCC 14(a)(1) and 14(c)(1) and interpretive case law is valid in light of the constitutional and statutory boundaries of this federal court? This court concludes that the Court of Claims precedent on point will likely be held no longer valid. *See South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982) (Court of Claims cases are binding precedent until overruled by an *en banc* decision of the Federal Circuit).

The noticed third parties cite the recent Supreme Court case of *Martin v. Wilks*, — U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), in support of their position challenging the constitutionality of RUSCC 14(a)(1) and 14(c)(1). In *Martin*, the plaintiffs were white firemen who claimed they had been discriminated against on the basis of race by their public employer. The employer raised as a defense the consent decree it had entered into previously after litigation with certain minority firefighters. This decree approved the promotional plan which plaintiffs claimed was discriminatory. The district court held that plaintiffs were precluded from suing based on acts taken pursuant to the decree, because the plaintiffs had notice of the first suit and subsequent decree, even though the plaintiffs had not been parties to the suit. The Court of Appeals for the Eleventh Circuit reversed and held that the plaintiffs could not be bound by a judgment to which they were not parties. *In re Birmingham Re-*

verse *Discrimination Employment Litigation*, 833 F.2d 1492 (11th Cir.1987). The United States Supreme Court granted *certiorari* based on conflict between the circuits, the majority of which had approved the preclusive effect of a judgment upon a person not a party to the litigation, and affirmed the Eleventh Circuit's decision. The Court broadly states the rule:

> [A] party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined.... *Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.* [Emphasis added.]

109 S.Ct. at 2185, 2186 (citation omitted).

Movants, other than defendant, strenuously urge that *Martin* is applicable to the case at bar and in consequence, that the "binding effect" of RUSCC 14(a)(1) and 14(c)(1) exceeds the jurisdiction of the Claims Court.

In response, plaintiff argues that the holding in *Martin* does not involve constitutional law, but is limited to the Federal Rules of Civil Procedure, specifically Rule 19, the joinder rule and Rule 24, the intervention rule. However, *Martin* cannot be construed so narrowly. Although a civil rights case involving a consent decree, *Martin* was based on the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Martin*, 109 S.Ct. at 2184 (citations omitted). This rule is part of our "deep rooted historic tradition that everyone should have his own day in court." *Id.* (Citation omitted.) The Supreme Court found that this general rule was incorporated into the Federal Rules of Civil Procedure. Therefore, RUSCC 14(a)(1) and 14(c)(1) can be applied only in accord with this "principle of general application in an-

---

**8.** This analysis is applicable to AAAA. On the court's own motion, the notice issued to AAAA is quashed.

glo-American jurisprudence." [9]  *Id.* (Citations omitted.)

Plaintiff further argues that the RUSCC 14 notice provisions are constitutionally valid because they are exceptions to this general rule of *Martin* "that a person cannot be deprived of his legal rights in a proceeding to which he is not a party." *Martin,* 109 S.Ct. at 2183. Plaintiff fails to indicate how any exception mentioned in *Martin* applies in this case. In consequence, RUSCC 14(a)(1) and 14(c)(1) do not fall, either directly or by analogy, into one of the few exceptions listed in *Martin* to this general rule. These include, for example, where a nonparty to a proceeding "has his interests adequately represented by someone with the same interests who is a party.... Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example, in bankruptcy or probate, legal proceedings may terminate preexisting rights if the scheme is otherwise consistent with due process." *Martin,* 109 S.Ct. at 2184 n. 2 (citations omitted). In addition, plaintiff notes that the respondents in *Martin* did not receive a formal invitation to appear. In contrast, the noticed parties in the instant case received RUSCC 14(a)(1) notice which requests them to appear as a party. However, *Martin* specifically held that notice of proceedings alone is not enough to bind non-parties to a judgment. 109 S.Ct. at 2186.

Plaintiff insists that the case at bar is controlled by *Myrtle Beach Pipeline Co. v. United States,* 6 Cl.Ct. 363 (1984), which discusses the venerated distinction between the binding conclusions of fact and law on subsequent court proceedings on a noticed third party versus a judgment against that party. This distinction is based on the court's subject matter jurisdiction power to make the former, but not the latter. *Compare Uram v. United States,* 216 Ct.Cl. at 420 ("Should a noticed person decline to appear, however, he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court") with *Id.* ("Unless the Government asserts a claim for the recovery of money from the third party in question or unless the third party asserts a claim or an interest in a claim against the Government, this court is not empowered to render judgment against that third party") (citation omitted); *See Midwest Industrial Painting of Florida v. United States,* 1 Cl.Ct. 209, 211 (1983). After *Martin,* this distinction may be no longer valid. In any event, the court does not find the *Myrtle Beach* analysis appropriate here.[10]

Plaintiff contends that if this court applies *Martin* to the motions to notice, it should be done prospectively, to contracts entered into after the date of the *Martin* decision. According to plaintiff, the contract contained the expectation of being able to use the well established Rule 14(a)(1) to notice third parties. However, the holding in *Martin* was based on a rule of jurisdiction, and not one of contract law. Besides, *Martin* does not interfere with plaintiff's ability to proceed against the parties elsewhere. Finally, there is no indication that *Martin* directs courts to prospectively apply this jurisdiction rule.

Defendant tries to harmonize *Martin* with Rule 14(a)(1), by making a distinction between the jurisdictional requirements for issuance of summons and those requirements for the issuance for notice. Defendant cites to *Del–Rio Drilling Programs Inc.,* 17 Cl.Ct. at 844, which explains that while the court's power to summons relates to the power of the court to render *judgment* against a third party, in contrast, issuance of notice relates only to the court's ability to *notify* a third party that its apparent interest may be effected and that determinations made on the facts will preclude certain later litigation. "Issuance of notice provides an opportunity for those

9. In addition, this general principle is applicable to this court because the Rules of the Claims Court are based upon the Federal Rules of Civil Procedure. RULES OF THE UNITED STATES CLAIMS COURT, p. iii (rev. ed. Nov. 1, 1985).

10. "The orders and opinions of a judge of coordinate jurisdiction constitute persuasive but not binding authority". *Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983) (citation omitted).

third parties to be present when such determinations are made." *Del–Rio*, 17 Cl.Ct. at 849 n. 9 (citation omitted). Consequently, according to *Del Rio*, the court's power to render judgment is never raised under RUSCC 14(a)(1) and interpretive case law. According to defendant, *Martin* is concerned only with the court's power to render a judgment and not a court's power to notify. The court disagrees with defendant's distinction. The Supreme Court expressly rejected the analogous contention of "the great majority of the federal courts of appeals," *Martin*, 109 S.Ct. at 2185: "They argue that respondents were aware that the underlying suit might affect them and if they chose to pass up an opportunity to intervene, they should not be permitted to later litigate the issues in a new action." *Id.* The Supreme Court held that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin*, 109 S.Ct. at 2184. Binding contentions of fact and law over a non-party that occur under RUSCC 14(a)(1) and 14(c)(1), "[conclude] the rights" of a non-party. *Id.* This is in violation of *Martin*.

The court finds that *Martin* is applicable to the case at bar, and so concludes that the court has no power to create binding factual or legal determinations concerning parties who are not subject to the jurisdiction of the court. The Claims Court cannot, through its rule-making power, expand its jurisdiction beyond the limits prescribed by Congress. *Rolls–Royce Limited, Derby, England v. United States*, 176 Ct.Cl. 694, 701, 364 F.2d 415 (1966).

In light of the above analyses, the court now turns to the allegations of interest made concerning the noticed parties.

### *AAAA, DiversiTech, Apache, BRP & H*

█ Plaintiff maintains that since AAAA was the roofing subcontractor, it was responsible for performing to the satisfaction and acceptance of defendant. Consequently, according to plaintiff, AAAA will indemnify "plaintiff for any damages plaintiff might suffer or any judgment which might be entered against plaintiff and in favor of defendant both under the subcontract and as a matter of law." Plaintiff concludes that this is AAAA's interest in the subject matter.

Next, plaintiff contends that Apache has an interest in the subject matter because, as the roofing insulation supplier for the project, Apache "expressly or impliedly warranted that its product was of good and merchantable quality and fit for its intended uses." Consequently, "any liability of plaintiff for Apache's misfeasance would be vicarious and constructive and solely due to the fault of Apache without any fault on the part of plaintiff." Furthermore, plaintiff continues, Apache is liable to plaintiff for any damages plaintiff suffered on account of the roof, including indemnification of plaintiff.

Then, plaintiff argues that BRP & H, as defendant's architect, acted as defendant's agent and as such its actions absolve plaintiff of any liability. Consequently, it would have an interest in the subject matter. Plaintiff also asserts that BRP & H is also liable to plaintiff for all or a portion of any damages plaintiff may suffer on account of the condition of the roof, including damages occasioned through any judgment that might be entered in favor of plaintiff.

Finally, plaintiff submits that DiversiTech, as manufacturer of the roofing membrane used on the project, issued an express warranty of the roofing system against failures for a number of causes, including negligence or misuse by AAAA. Therefore, plaintiff continues, DiversiTech is liable for any damages plaintiff may suffer on account of the roof, to the same extent as AAAA, for which DiversiTech was contractually responsible under its warranty. Plaintiff asserts that this potential liability forms the basis for DiversiTech's interest in the subject matter.

In essence, plaintiff attempts to make its allegations against AAAA, DiversiTech, Apache and BRP & H appear to be claims of indemnity. However, these are private parties who did not contract with the Government. Furthermore, none of these parties has any interest, either apparent or

**8**

otherwise, in plaintiff's claim or in defendant's counterclaim. Consequently, the respective motions to quash of Apache, BRP & H and DiversiTech are granted.[11]

### Transamerica

 In addition to contesting the motion to quash, defendant requests the issuance of a summons. Defendant argues that Transamerica has a contingent claim arising out of the subject matter of the pending action. Should damages be adjudged against plaintiff for its breach of contract, argues defendant, then Transamerica may be required to reimburse defendant for those damages under the terms of the performance bond.

In *Bowser, Inc. v. United States*, 190 Ct.Cl. 441, 449, 450, 420 F.2d 1057 (1970), *on reconsideration*, 192 Ct.Cl. 377, 427 F.2d 740 (1970), the Court of Claims held that, for government claims against a third party, no jurisdiction over a third party exists unless (1) the Government's claim is for the recovery of money already paid out to the third party by the Government with respect to the subject transaction, or, (2) the third party has asserted a claim or an interest in a claim against the United States.[12] Here, defendant has made no allegations that the Government seeks recoupment of funds previously paid to Transamerica. In addition, the record indicates that Transamerica has not asserted a claim or an interest in a claim against defendant. Consequently, summons cannot be properly issued to Transamerica here.

 However, issuance of notice to Transamerica is proper under Court of Claims precedent. *See Carrier Corp. v. United States*, 209 Ct.Cl. at 269 ("A person against whom the United States alleges a nonfrivolous claim for indemnity is a party who '*appears*' to have such an interest"). This does not mean that this court has jurisdiction over Transamerica. *Uram*, 216 Ct.Cl. at 420. In addition, this court cannot consider the surety agreement in this proceeding. *See Carrier Corp.*, 209 Ct.Cl. at 269; *see also Bowser, Inc.*, 190 Ct.Cl. at 450 ("if the government wishes to take action against the third party to enforce the indemnity agreement, it has its remedy in the proper forum") (citations omitted). It is important to note that after *Martin*, notice may still serve a function in this court, despite its invalid "binding effect." In any event, this court is bound by Court of Claims precedent, and we will leave questions over the subsequent validity and usefulness of the notice provision(s) of the RUSCC for a higher tribunal to decide. *See South Corp. v. United States*, 690 F.2d at 1370 n. 2. It follows that Transamerica's motion to quash notice is denied.

### Conclusion

For all the above reasons, the notices issued to AAAA, Apache, BRP & H and DiversiTech, pursuant to the court's order of August 24, 1989, are quashed. Transamerica's motion to quash is denied.

---

11. *See supra* n. 8.

12. The holding in *Christy Corp. v. United States*, 181 Ct.Cl. 768, 773, 387 F.2d 395 (1967), which mentions sureties, assignees and indemnifiers, is elaborated by *Bowser, Inc., v. United States*, 190 Ct.Cl. 441, 448–50, 420 F.2d 1057 (1970), *on reconsideration*, 192 Ct.Cl. 377, 427 F.2d 740 (1970).